# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>PES Holdings, LLC, *et al.*,<br><br>           Debtors. | Case No. 1:20-cv-00441 |
| Multiple Insurers,<br><br>           Appellants,<br>   v.<br><br>PES Holdings, LLC, et al.,<br><br>           Appellees. | On Appeal from the U.S. Bankruptcy Court for the District of Delaware (No. 19-11626 (KG)) |

## BRIEF FOR APPELLANTS

**WILMER CUTLER PICKERING HALE AND DORR LLP**
Benjamin W. Loveland
60 State Street
Boston, MA 02109
Telephone: 617-526-6000
Benjamin.Loveland@wilmerhale.com

Allyson Pierce
250 Greenwich Street
New York, NY 10007
Telephone:  212-230-8800
Allyson.Pierce@wilmerhale.com

**WILMER CUTLER PICKERING HALE AND DORR LLP**
Craig Goldblatt [Del. Bar. No. 6665]
Danielle Spinelli
Joel Millar
1875 Pennsylvania Avenue, NW
Washington, DC 20006
Telephone: 202-663-6000
craig.goldblatt@wilmerhale.com

# CORPORATE DISCLOSURE STATEMENT

Pursuant to Rule 8012 of the Federal Rules of Bankruptcy Procedure, appellants make the following disclosures, which may be supplemented to the extent counsel becomes aware of any other parent corporation or publicly held corporation that owns 10 percent or more of the stock of any appellant.

**ACE American Insurance Company.** ACE American Insurance Company is a wholly owned subsidiary of INA Holdings Corporation, which is a wholly owned subsidiary of INA Financial Corporation, which is a wholly owned subsidiary of INA Corporation, which is a wholly owned subsidiary of Chubb INA Holdings Inc. Chubb INA Holdings Inc. is owned 80% by Chubb Group Holdings Inc. and 20% by Chubb Limited, a publicly traded corporation. Chubb Group Holdings Inc. is a wholly owned subsidiary of Chubb Limited.

**Allianz Global Risks US Insurance Companies.** The following entities each hold 10 percent or more of the equity interests of Allianz Global Risks US Insurance Companies: Allianz of America, Inc. and AGCS International Holding, B.V. Each of Allianz of America, Inc. and AGCS International Holding B.V. are wholly owned indirect subsidiaries of Allianz SE., a publicly traded corporation.

**General Security Indemnity Company of Arizona.** General Security Indemnity Company of Arizona is a wholly-owned subsidiary of SCOR SE, a publicly traded corporation.

i

**Great Lakes Insurance SE.**  Great Lakes Insurance SE, is wholly-owned by Muenchener Rueckversicherungsgesellschaft AG, a publicly traded corporation.

**HDI Global Insurance Company.**  HDI Global Insurance Company is a wholly owned subsidiary of HDI Global Network AG, which is an indirect subsidiary of Talanx AG, a publicly traded corporation.

**HDI Global Specialty Insurance Company**.  HDI Global Specialty Insurance Company is a wholly owned subsidiary of HDI Global Insurance Company, which is an indirect subsidiary of Talanx AG, a publicly traded corporation.

**Helvetia Swiss Insurance Company.**  Helvetia Swiss Insurance Company is a wholly-owned subsidiary of Helvetia Swiss Insurance Company Ltd, which is a wholly-owned subsidiary of Helvetia Holding Ltd, a publicly traded corporation.

**Lancashire Insurance Company (UK) Limited.**  Lancashire Insurance Company (UK) Limited is a wholly-owned subsidiary of Lancashire Insurance Holdings (UK) Limited ("LIHL").  LIHL is a wholly-owned subsidiary of Lancashire Holdings Limited, a publicly-traded corporation.

**Liberty Mutual Insurance Company.**  Liberty Mutual Insurance Company is a wholly-owned subsidiary of Liberty Mutual Group Inc., which is a wholly-owned subsidiary of LMHC Massachusetts Holdings Inc., which is a wholly-

owned subsidiary of Liberty Mutual Holding Company Inc.  No company owns 10 percent or more of the equity interests of Liberty Mutual Holding Company Inc.

**Lloyds Syndicates:**

Lloyds syndicates are not formal legal entities.  The affairs of a syndicate are managed by managing agents.  Liability for losses arising under an insurance policy issued by a syndicate is borne by its members.  To the extent the managing agents are aware of any corporation that holds an interest in the syndicate of 10 percent or more, those holdings are disclosed below.

**Navigators Syndicate at Lloyd's 1221.**  Navigators Corporate Underwriters Limited is the sole member of Navigators Syndicate at Lloyd's 1221.  Navigators Corporate Underwriters Limited is a wholly-owned, indirect subsidiary of Hartford Financial Services Group, Inc., a publicly-traded corporation.

**Lloyds's Syndicate TAL 1183 (Talbot).**  Talbot 2002 Underwriting Capital Ltd is the sole corporate member of Lloyd's Syndicate 1183.  Talbot 2002 Underwriting Capital Ltd is ultimately wholly owned by American International Group, Inc., a publicly traded corporation

**RenRe Syndicate Number 1458.**  RenaissanceRe Corporate Capital (UK) Limited is the sole member of RenRe Syndicate Number 1458.

**Lloyd's Syndicate 1884.**  Premia Corporate Name has an ownership share of greater than ten percent in Lloyd's Syndicate 1884.  Premia Corporate Name is a subsidiary of Premia Holdings Ltd.

**Lloyd's Consortium 9094 (Pioneer).**  The following syndicates have an ownership share of ten percent or greater in Lloyd's Consortium 9094 (Pioneer):  Pioneer Syndicate 1980, Canopius Syndicate 4444, SA Meacock Syndicate 727, Neon Syndicate 2468, Dale Underwriting Partners Syndicate 1729.  The managing agent of Lloyd's Consortium 9094 (Pioneer) has not identified any corporate entity with a greater than ten percent ownership interest.

**Lloyd's Consortium 9551.**  Lloyd's Consortium 9551 is a syndicate whose members are eight other syndicates (several of which are themselves appellants).  Accordingly, appellants are not aware of any corporation that holds, directly or indirectly, an interest in Lloyd's Consortium 9551 of ten percent or greater.

**Lloyd's Underwriter Syndicate 1084 CSL.**  Chaucer Corporate Capital (No.3) Limited is the sole corporate member of Lloyd's Underwriter Syndicate 1084 CSL.  Hong Kong Securities Clearing Company Nominees Limited holds an indirect equity stake in Lloyd's Underwriter Syndicate 1084 CSL of ten percent or greater.

**Lloyd's Underwriter Syndicate 1200 AMA.**  The Argo Group companies have an ownership share of greater than ten percent of Lloyd's Underwriter Syndicate 1200 AMA.

**Lloyd's Syndicate 2003 XLC.**  Catlin Syndicate Limited is the single member of Lloyd's Syndicate 2003.  Catlin Syndicate Limited is ultimately wholly-owned by AXA S.A., a publicly-traded company.

**Lloyd's Underwriter Syndicates 1955 BAR. (Barbican).**   Barbican Corporate Member Limited is the sole member of Lloyd's Syndicate 1955 for the 2018 year of account.  Barbican Corporate Member Limited is ultimately wholly owned by Arch Capital Group Limited, a publicly traded company.

**Lloyd's Underwriter Syndicate No. 1036 COF. (QBE).**  Counsel to Lloyds' Underwriter Syndicate No. 1036 COF. (QBE) is not aware of any corporation that holds an interest in Lloyd's Underwriter Syndicate No. 1036 COF. (QBE) of 10 percent or more.

**Lloyd's Underwriter Syndicate 3902 NOA.**  Ark Corporate Member is the sole member of Lloyds's Underwriter Syndicate 3902 NOA.  Ark Insurance Holdings Limited is the indirect holder of all of the equity in Ark Corporate Member.

**Mapfre España, Compañía de Seguros y Reaseguros S.A.**  The following entities each hold 10 percent or more of the equity interests of Mapfre España, Compañía de Seguros y Reaseguros S.A.:  Mapfre, S.A. and Mapfre Participaciones, S.A.

**PartnerRe Ireland Insurance DAC.**  PartnerRe Ireland Insurance DAC is a wholly owned subsidiary of PartnerRe Holdings Europe Limited, which is a wholly owned subsidiary of PartnerRe Ltd., a publicly traded corporation.

**Westport Insurance Corporation.**  Westport Insurance Corporation is a wholly owned subsidiary of SR Corporate Solutions America Holding Corporation, which is a wholly owned subsidiary of Swiss Re Corporate Solutions Ltd, which is a wholly owned Subsidiary of Swiss Re AG, a publicly traded corporation.

**XL Insurance Company SE (as successor to AXA Corporate Solutions Assurance).**  XL Insurance Company SE is the successor to AXA Corporate Solutions Assurance following a merger.  XL Insurance Company SE assumed all liabilities of AXA Corporate Solutions Assurance and AXA Corporate Solutions Assurance ceased to exist.  XL Insurance Company SE is ultimately wholly owned by AXA S.A., a publicly traded corporation.

**XL Insurance America Inc.**  XL Insurance America, Inc. ("XLIA") is a direct subsidiary of Greenwich Insurance Company, Inc. and is an indirect

subsidiary of XL Reinsurance America Inc., X.L. America, Inc., XL Financial

Holdings (Ireland) Limited, XL Bermuda Ltd, EXEL Holdings Limited, XLIT

Ltd., XL Group Ltd, and AXA SA. The ultimate indirect parent of XLIA is AXA

S.A., a publicly traded corporation.

**Zurich American Insurance Company.**  Zurich American Insurance

Company is a wholly owned subsidiary of Zurich Holding Company of America,

Inc., which is wholly owned subsidiary of Zurich Insurance Company Ltd, which

is a wholly owned subsidiary of Zurich Insurance Group Ltd, a publicly traded

corporation.

# TABLE OF CONTENTS

Page

CORPORATE DISCLOSURE STATEMENT ............................................................i

TABLE OF AUTHORITIES .................................................................................ix

PRELIMINARY STATEMENT .............................................................................1

JURISDICTIONAL STATEMENT .........................................................................4

QUESTION PRESENTED ON APPEAL ..................................................................5

STATEMENT OF THE CASE ...............................................................................5

SUMMARY OF ARGUMENT .............................................................................10

ARGUMENT ...................................................................................................12

I.      THE PLAN PROVISION EXTENDING THE AUTOMATIC STAY BEYOND
        PLAN CONFIRMATION CONTRAVENES THE EXPRESS TERMS OF § 362 OF
        THE BANKRUPTCY CODE .....................................................................12

II.     THE BANKRUPTCY COURT'S AUTHORITY UNDER § 105 OF THE
        BANKRUPTCY CODE CANNOT BE USED TO OVERRIDE THE EXPRESS
        TERMS OF § 362 .................................................................................20

III.    THE PLAN PROVISION EXTENDING THE AUTOMATIC STAY IS NOT A
        PERMISSIBLE PLAN INJUNCTION BARRING COLLECTION OF claims
        DISCHARGED OR RELEASED UNDER THE PLAN ......................................22

CONCLUSION ................................................................................................27

# TABLE OF AUTHORITIES

Page(s)

## CASES

*Calderon v. Commodore Holdings Ltd.*,
    No. 02 Civ. 8273 (DC), 2004 WL 385062 (S.D.N.Y. Mar. 1,
    2004) ..............................................................................................................15

*Centerpoint Props. v. Montgomery Ward Holding Corp. (In re
    Montgomery Ward Holding Corp.)*,
    268 F.3d 205 (3d Cir. 2001) ...........................................................................5

*In re Combustion Eng'g, Inc.*,
    391 F.3d 190 (3d Cir. 2005) ....................................................10, 20, 21, 22

*In re Denby-Peterson,*
    941 F.3d 115 (3d Cir. 2019), *pet. for cert. filed sub nom.
    Denby-Peterson v. NU2U Auto World*, No. 19-1063 (U.S. Feb.
    26, 2020) .......................................................................................................17

*In re Good*,
    428 B.R. 235 (Bankr. E.D. Tex. 2010) .........................................................15

*In re Greater Am. Land Res., Inc.*,
    452 B.R. 532 (Bankr. D.N.J. 2011), *aff'd sub nom. Greater Am.
    Land Res., Inc. v. Town of Brick*, No. 11-cv-5308 (CCC), 2012
    WL 1831563 (D.N.J. May 17, 2012)..............................................................15

*In re Scarborough-St. James Corp.*,
    535 B.R. 60 (Bankr. D. Del. 2015)................................................................18

*In re VistaCare Grp., LLC*,
    678 F.3d 218 (3d Cir. 2012) ....................................................................3, 17

*Law v. Siegel*,
    571 U.S. 415 (2014)........................................................................10, 20, 21

*Mission Prod. Holdings, Inc. v. Tempnology, LLC,*
    139 S. Ct. 1652 (2019)....................................................................................2

*N.J. Dep't of Envtl. Prot. v. IT Litig. Tr. (In re IT Grp., Inc.)*,
    339 B.R. 338 (D. Del. 2006) ................................................................. 14-15

*Orange Cty. Water Dist. v. Fairchild Corp. (In re Fairchild Corp.)*,
    No. C.A. 09-10899-CSS, 2014 WL 7215211 (D. Del. Dec. 17,
    2014) .................................................................................................. 14

*Ritzen Group, Inc. v. Jackson Masonry, LLC*,
    140 S. Ct. 582 (2020) ......................................................................... 17

*Russello v. United States*,
    464 U.S. 16 (1983) .............................................................................. 17

*United States Dep't of Air Force v. Carolina Parachute Corp.*,
    907 F.2d 1469 (4th Cir. 1990) ........................................................... 14

*United States v. White*,
    466 F.3d 1241 (11th Cir. 2006) ......................................................... 14

## STATUTES

11 U.S.C. § 105 ...........................................................10, 20, 21, 22, 24

11 U.S.C. § 350 ................................................................................... 7

11 U.S.C. § 362 ...........................................................................*passim*

11 U.S.C. § 501 ................................................................................. 25

11 U.S.C. § 502 ................................................................................. 25

11 U.S.C. § 522 ................................................................................. 21

11 U.S.C. § 524 .......................................................... 11, 21, 22, 24

11 U.S.C. § 1123 ..................................................................16, 18, 24

11 U.S.C. § 1129 ............................................................................... 16

11 U.S.C. § 1141 .........................................................................*passim*

28 U.S.C. § 157 ................................................................................... 5

28 U.S.C. § 158 ................................................................................... 5

x

28 U.S.C. § 1334 ................................................................................ 4-5

## RULES

Fed. R. Bankr. P. 3001 ...........................................................................25

Fed. R. Bankr. P. 3002 ...........................................................................25

Fed. R. Bankr. P. 3003 ...........................................................................25

Fed. R. Bankr. P. 3004 ...........................................................................25

Fed. R. Bankr. P. 3005 ...........................................................................25

Fed. R. Bankr. P. 3006 ...........................................................................25

Fed. R. Bankr. P. 3007 ...........................................................................25

Fed. R. Bankr. P. 3008 ...........................................................................25

Fed. R. Bankr. P. 3022 .............................................................................7

Fed. R. Bankr. P. 8002 .............................................................................5

## OTHER AUTHORITIES

H.R. Rep. No. 95-595 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963 .........3, 17, 18

S. Rep. No. 95-989 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787 .......................18

# PRELIMINARY STATEMENT

The question in this appeal is whether a bankruptcy court may extend the statutory automatic stay of litigation against a Chapter 11 debtor beyond the confirmation of a Chapter 11 plan.  The question has a simple answer:  No.  The Bankruptcy Code provides for an automatic stay of certain litigation against debtors while a bankruptcy case is pending.  The stay grants debtors time to negotiate a plan of reorganization and ensures an orderly and equitable distribution of estate assets to creditors.  But the Code expressly mandates that the automatic stay terminates upon confirmation of a Chapter 11 plan.  Because the bankruptcy court here extended the automatic stay beyond confirmation, in violation of the Code's plain language and the rights of Appellants, the Debtors' insurers, its order should be reversed.

PES Holdings, LLC and various affiliates, the Debtors[1] in these Chapter 11 cases and Appellees in this appeal, operated the largest oil refinery on the East Coast.  Following an explosion at the refinery, the Debtors filed Chapter 11 bankruptcy cases in the U.S. Bankruptcy Court for the District of Delaware.  The

---

[1]     The Debtors in these Chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are PES Holdings, LLC (8157); North Yard GP, LLC (5458); North Yard Logistics, L.P. (5952); PES Administrative Services, LLC (3022); PES Energy Inc. (0661); PES Intermediate, LLC (0074); PES Ultimate Holdings, LLC (6061); and Philadelphia Energy Solutions Refining and Marketing LLC (9574). The Debtors' service address is 1735 Market Street, Philadelphia, Pennsylvania 19103.

1

Debtors have asserted claims under insurance policies issued by multiple insurers (the "Insurers"), the Appellants in this appeal, for losses arising out of the refinery explosion. The Insurers sought to work with the Debtors to resolve those claims consensually, and they advanced tens of millions of dollars to the Debtors during the bankruptcy proceedings. As the case progressed, however, it became apparent that the parties' disputes over insurance coverage would likely ripen into litigation.

An insured's bankruptcy does not give it any greater rights to insurance coverage than it would have outside bankruptcy. That is a fundamental principle of bankruptcy law. *See Mission Prod. Holdings, Inc. v. Tempnology, LLC*, 139 S. Ct. 1652, 1663 (2019) ("Whatever limitations on the debtor's property apply outside of bankruptcy apply inside of bankruptcy as well. A debtor's property does not shrink by happenstance of bankruptcy, but it does not expand, either." (internal quotation marks and alterations omitted)). The Debtors' and Insurers' rights and obligations regarding coverage are governed by the terms of the insurance policies and applicable non-bankruptcy law, and the Debtors' bankruptcy filing changed none of that.

The Debtors' bankruptcy filing did have a temporary effect on the Insurers' procedural rights, however. Outside bankruptcy, the Insurers would be free to commence a declaratory-judgment action against the Debtors in an appropriate forum to obtain a declaration of the parties' rights under the insurance policies.

2

The bankruptcy filings gave the Debtors a temporary reprieve from such litigation under the Bankruptcy Code's automatic stay provision.  11 U.S.C. § 362(a)(1).  The automatic stay is designed to give the debtor a "breathing spell" while it seeks to negotiate and confirm a Chapter 11 plan of reorganization that will resolve its financial distress.  *In re VistaCare Grp., LLC*, 678 F.3d 218, 231 (3d Cir. 2012) (citing H.R. Rep. No. 95-595, at 174 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6135).

But the automatic stay ends when the bankruptcy court confirms a plan of reorganization.  The Bankruptcy Code provides that, in a Chapter 11 case, the automatic stay terminates no later than "the time a discharge is granted or denied." 11 U.S.C. § 362(c)(2)(C).  And, in a Chapter 11 case, a discharge is granted or denied when the bankruptcy court confirms a plan of reorganization.  *Id.* § 1141(d).

In this case, the bankruptcy court confirmed the Debtors' plan of reorganization.  In accordance with § 1141 of the Bankruptcy Code, the plan granted (or in certain cases denied) the Debtors a discharge of their pre-confirmation debts.  Section 362(c)(2)(C) of the Bankruptcy Code thus required the automatic stay to terminate at that point.

The Debtors nonetheless sought to retain the automatic stay's litigation shield after confirmation of their plan, in a transparent attempt to obtain a litigation

3

advantage against the Insurers in the parties' coverage dispute. The Debtors included a provision in their plan—effectuated by the order on appeal here—providing that the automatic stay would remain in effect, solely with respect to the Insurers, until the Debtors' Chapter 11 cases are closed, which does not occur until all administrative matters are wrapped up, often years after plan confirmation. Extending the automatic stay beyond confirmation forces the Insurers to defend their rights under the constraint of an injunction. It prevents them, among other things, from commencing a declaratory judgment action in a forum of their choosing, while leaving the Debtors free to bring litigation in their preferred forum. Indeed, hours after the bankruptcy court confirmed the plan, the Debtors commenced coverage litigation against the Insurers in the bankruptcy court.

The extension of the stay contravenes the express terms of the Bankruptcy Code mandating that the automatic stay must terminate upon plan confirmation. The bankruptcy court's order approving the extension of the stay was in error and should be reversed.

## JURISDICTIONAL STATEMENT

On March 18, 2020, the bankruptcy court entered a final, immediately appealable order approving the plan provision extending the automatic stay until the closing of the Debtors' Chapter 11 cases [Bankr. D.I. 1097] (the "Stay Order"). The bankruptcy court had jurisdiction to enter the Stay Order pursuant to 28 U.S.C.

4

§ 1334(b) and this Court's Amended Standing Order of Reference dated February 29, 2012, which refers proceedings arising under the Bankruptcy Code or in a bankruptcy case to the bankruptcy court pursuant to 28 U.S.C. § 157(a). Appellants filed a timely notice of appeal [Bankr. D.I. 1123] from the Stay Order on March 30, 2020.  *See* Fed. R. Bankr. P. 8002(a)(1).  This Court has appellate jurisdiction under 28 U.S.C. § 158(a)(1).

## QUESTION PRESENTED ON APPEAL

Whether, in a case filed under Chapter 11 of the Bankruptcy Code, the automatic stay of litigation against the debtor must terminate, pursuant to 11 U.S.C. § 362(c)(2)(C), no later than the time a discharge is granted or denied.

The question presented is a purely legal issue of statutory interpretation, which this court reviews *de novo*.  *See Centerpoint Props. v. Montgomery Ward Holding Corp. (In re Montgomery Ward Holding Corp.)*, 268 F.3d 205, 208 (3d Cir. 2001).

## STATEMENT OF THE CASE

The Debtors were the owners and operators of the largest oil refinery on the East Coast.  *Corrected Disclosure Statement for the Joint Chapter 11 Plan of PES Holdings, LLC and its Debtor Affiliates* [Bankr. D.I. 465] ("Disclosure Statement") at 4.  On June 21, 2019, the Debtors' facilities suffered substantial damage in a large-scale explosion.  *Id.*  The Debtors sought bankruptcy protection under Chapter

5

11 of the Bankruptcy Code by filing a petition, on July 21, 2019 (the "Petition Date"), in the U.S. Bankruptcy Court for the District of Delaware. *Id.* at 5.

The Insurers issued insurance policies to certain of the Debtors under an insurance program that, subject to the terms, limitations and conditions of the applicable insurance policies, provides for property-damage and business-interruption insurance with aggregate limits of $1.25 billion. Disclosure Statement at 28. Following the refinery explosion, the Debtors made claims against the policies, and the Insurers actively engaged with the Debtors to evaluate and resolve those claims. The Insurers advanced $65 million for property-damage losses under the policies during the bankruptcy proceedings before confirmation of the plan.[2] The process for determining the amount of losses covered under the policies was complex, however, and the parties faced the prospect that litigation might become necessary if they could not resolve all of their disputes over coverage consensually.

On January 29, 2020, the Debtors filed the *Second Amended Joint Chapter 11 Plan of PES Holdings, LLC and its Debtor Affiliates* [Bankr. D.I. 827]. The plan included a provision that, if approved, would prevent the Insurers from exercising their right to commence a declaratory judgment action in a forum of their choosing to resolve the parties' coverage disputes. It stated that "the automatic stay pursuant

---

[2]      *See Stipulation and Agreed Order Regarding Advance of June 21 PD Insurance Proceeds* [Bankr. D.I. 365]; *Second Stipulation and Agreed Order Regarding Advance of June 21 PD Insurance Proceeds* [Bankr. D.I. 678].

to section 362 of the Bankruptcy Code shall remain in full force and effect with respect to the Liquidating Trust and … the Insurers, in each case until the closing of these Chapter 11 Cases." *Id.* at ¶ X.H.

The Bankruptcy Code's "automatic stay" provision imposes a "stay" of, among other things, "the commencement … of a judicial, administrative, or other action or proceeding against the debtor" that could have been commenced before the petition date. 11 U.S.C. § 362(a)(1). The stay arises automatically upon the filing of a bankruptcy petition, *id.* § 362(a), and "continues until the earliest of (A) the time the case is closed; (B) the time the case is dismissed; or (C) if the case is a case under chapter … 11, … the time a discharge is granted or denied." *Id.* § 362(c)(2). In a Chapter 11 case, a discharge is granted or denied at the time that the bankruptcy court confirms a plan of reorganization. *Id.* § 1141(d). In large Chapter 11 cases like this one, the case may not be closed until much later, sometimes years after plan confirmation, while creditors' claims against the debtors are resolved and various other post-confirmation administrative matters are completed. *Id.* § 350(a); Fed. R. Bankr. P. 3022.

On February 7, 2020, the Insurers filed an objection to the plan, arguing that the provision continuing the automatic stay beyond plan confirmation until case closing was unlawful. *See Objection and Reservation of Rights of Multiple Insurers to the Second Amended Joint Chapter 11 Plan* [Bankr. D.I. 928]. The Insurers

7

argued that such an extension would contravene the express terms of Section 362(c) terminating the automatic stay upon confirmation of a Chapter 11 plan. *Id.* at 6-9.

On February 12, 2020, the bankruptcy court heard argument on the Insurers' objection to the plan at the hearing on plan confirmation. Confirmation Hearing Transcript (Feb. 12, 2020) [Bankr. D.I. 1007] ("Confirmation Tr.") at 34-36, 89-102. At the hearing, the Debtors' counsel argued that, notwithstanding the terms of the plan explicitly continuing the "automatic stay" beyond plan confirmation, the plan provision was "not an extension of a stay" but rather a "customary provision of plans" imposing an "injunction [to] provide[] the efficient mechanism for the administration of claims against the debtors." *Id.* at 97-98, 101.

Ruling from the bench, the bankruptcy court overruled the Insurers' objection. The court acknowledged that the Insurers had "a good and strong argument." Confirmation Tr. at 137. But, stating that it was "concerned … that the insurers would be able to jump in and file litigation," the court decided "to overrule that objection on the basis of, frankly, the injunctive relief available under the plan." *Id.* The bankruptcy court did not further explain its decision. Just hours later, the Debtors filed suit against the Insurers in the bankruptcy court, seeking a declaratory judgment and damages of "more than $1 billion." *Complaint* [Bankr. D.I. 990] at 4.

On February 13, 2020, the bankruptcy court entered an order confirming an amended version of the plan. *Order Confirming the Fourth Amended Joint Chapter*

*11 Plan of PES Holdings, LLC and its Debtor Affiliates* [Bankr. D.I. 1004]

("Confirmation Order").  The confirmed plan contained the same provision

continuing the automatic stay beyond plan confirmation until case closing in a newly

re-numbered paragraph X.J.  *See* Confirmation Order Ex. A (Fourth Amended Plan)

(the "Plan") ¶ X.J. ("Notwithstanding anything to the contrary in the Plan or the Plan

Supplement, the automatic stay pursuant to section 362 of the Bankruptcy Code

shall remain in full force and effect with respect to the Liquidating Trust and Non-

Acquired Reorganized Debtors and, subject to the terms of the Global Resolution,

the Insurers, in each case until the closing of these Chapter 11 Cases.").

To permit the Insurers to appeal the extension of the automatic stay without

interfering with the finality of the Confirmation Order itself, the parties agreed that

the injunction continuing the automatic stay would be reflected in a separate order.

*See* Plan ¶ X.J.  That order—the Stay Order on appeal here—was entered by the

bankruptcy court on March 18, 2020.  *See Order Regarding Application of*

*Injunction* [Bankr. D.I. 1097] ¶ 1 (providing that "the injunctive relief set forth in

Article X of the Plan shall remain in full force and effect with respect to the (i)

Liquidating Trust and Non-Acquired Reorganized Debtors subject to the terms and

modifications of the Global Resolution and the Confirmation Order, and (ii) the

Insurers, in each case until the closing of these Chapter 11 Cases").

## SUMMARY OF ARGUMENT

The bankruptcy court erred as a matter of law in approving the Plan provision continuing the automatic stay beyond confirmation of the Plan.  The Bankruptcy Code expressly provides that, in a Chapter 11 case, the automatic stay terminates upon "the *earliest* of (A) the time the case is closed; … or (C) the time a discharge is granted or denied."  11 U.S.C. § 362(c)(2) (emphasis added).  In a Chapter 11 case, a discharge is granted or denied when the court confirms the plan. *Id.* § 1141(d).  The automatic stay thus terminates when the plan is confirmed, not when the case is closed months or years later.  Nothing in the language of § 362(c)(2)(C) or the provisions of Chapter 11 grants a bankruptcy court any authority to continue the automatic stay beyond the limits that Congress established in § 362 of the Bankruptcy Code.

Nor do the bankruptcy court's general equitable powers provide any authority to depart from the express mandate of § 362.  Although bankruptcy courts have equitable authority to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions" of the Bankruptcy Code, 11 U.S.C. § 105(a), the Supreme Court and the Third Circuit have repeatedly held that § 105(a) grants only limited authority to "carry out" the Code's substantive provisions, not to override them.  *Law v. Siegel*, 571 U.S. 415, 420-21 (2014); *In re Combustion Eng'g, Inc.*, 391 F.3d 190, 236 (3d Cir. 2005).

10

Finally, the Debtors' contention that the Plan does not extend the automatic stay and instead merely contains a "customary" plan injunction to "facilitate claims administration" (Confirmation Hearing Tr. at 98) is wrong on both the facts and the law.  The Plan contains two distinct injunctions.  One is a typical plan injunction enforcing the bankruptcy discharge under §§ 524 and 1141 of the Bankruptcy Code.  *See* 11 U.S.C. §§ 524(a)(1)-(2), 1141(d)(1)(A).  That injunction properly bars creditors from suing the Debtors outside the bankruptcy court to collect on claims that are discharged or released under the Plan, thus requiring creditors to pursue their claims against the Debtors in the bankruptcy process.  But *that* injunction does not apply to the Insurers, as they do not seek to assert any discharged or released claim against the Debtors.  Rather, the Insurers objected to the Plan's *other* injunction, which—contrary to the Debtors' claim—explicitly provides that "the automatic stay pursuant to section 362 of the Bankruptcy Code shall remain in full force and effect with respect to … the Insurers … until the closing of these Chapter 11 Cases."  Plan ¶ X.J.  That provision is neither customary nor lawful, and the bankruptcy court's order approving it should be reversed.

11

## ARGUMENT

**I.    THE PLAN PROVISION EXTENDING THE AUTOMATIC STAY BEYOND PLAN CONFIRMATION CONTRAVENES THE EXPRESS TERMS OF § 362 OF THE BANKRUPTCY CODE**

The Plan's extension of the automatic stay contravenes the Bankruptcy Code's express terms.

Under § 362, the filing of a bankruptcy petition operates as an automatic stay of a wide range of actions by creditors and other entities.  Those actions include, among others, acts to obtain possession of or to exercise control over property of the bankruptcy estate, 11 U.S.C. § 362(a)(3), and—most relevant here— "the commencement … of a judicial, administrative, or other action or proceeding against the debtor" that could have been commenced before the petition.  *Id.* § 362(a)(1). The stay on suing the debtor is broad and extends even to actions that do not necessarily seek to collect a debt.  *Id.*  Section 362(a)(1), if applicable, would thus stay the Insurers from commencing a declaratory-judgment action against the Debtors regarding the Debtors' claims for insurance coverage.

Section 362 also specifies when the automatic stay terminates.  "[T]he stay of an act against property of the estate under [Section 362(a)] continues until such property is no longer property of the estate."  11 U.S.C. § 362(c)(1).  The "stay of any other act under [Section 362(a)]"—such as the commencement of litigation against the debtor under § 362(a)(1)—"continues until *the earliest* of—(A) *the time*

*the case is closed*; (B) the time the case is dismissed; *or* (C) if the case is … a case under chapter … 11 …, *the time a discharge is granted or denied*."  *Id.* § 362(c)(2) (emphasis added).

In a Chapter 11 case, with exceptions not relevant here, the automatic stay terminates upon confirmation of a Chapter 11 plan.  That is because confirmation of a plan has two important consequences:  confirmation terminates the bankruptcy estate, and it grants (or denies) the debtor a discharge.

Specifically, § 1141 of the Bankruptcy Code provides that, except where the plan or order confirming the plan provides otherwise, "the confirmation of a plan vests all of the property of the estate in the debtor."  11 U.S.C. § 1141(b).  Because confirmation ordinarily terminates the bankruptcy estate, confirmation terminates the stay insofar as it stays any act against property of the estate.  *Id.* § 362(c)(1).

Confirmation of a plan is also the time when a discharge is either granted or denied (with exceptions not applicable here).  11 U.S.C. § 1141(d).[3]  Under § 1141, unless the plan or confirmation order provides otherwise, "the confirmation of a plan discharges the debtor from any debt that arose before the date of such

---

[3]      When the debtor is an individual, a discharge is not granted (or denied) at the time of plan confirmation, but rather when the debtor completes (or fails to complete) making all payments required under the confirmed plan.  *See* 11 U.S.C. § 1141(d)(5).

confirmation," *id.* § 1141(d)(1)(A), subject to certain enumerated exceptions.[4]

Because confirmation of a Chapter 11 plan is "the time a discharge is granted or

denied," *id.* § 362(c)(2)(C), confirmation terminates the stay of actions against the

debtor under § 362(a)(1).

    In view of this unambiguous statutory language, courts routinely hold that

§ 362(c) and § 1141 mandate termination of the automatic stay upon confirmation

of a Chapter 11 plan. *See, e.g.*, *United States Dep't of Air Force v. Carolina*

*Parachute Corp.*, 907 F.2d 1469, 1474 (4th Cir. 1990) ("[S]ince Confirmation of

the Plan has the dual effect of revesting the debtor with title to its property and

discharging the debtor from all discharg[e]able debts, there can be no further

application of the automatic stay after confirmation." (citation omitted)); *United*

*States v. White*, 466 F.3d 1241, 1244-47 (11th Cir. 2006) (confirmation of Chapter

11 plan terminated stay pursuant to §§ 362(c)(2)(C), 1141(d)(1)(A)); *Orange Cty.*

*Water Dist. v. Fairchild Corp.* (*In re Fairchild Corp.*), No. C.A. 09-10899-CSS,

2014 WL 7215211, at *3 (D. Del. Dec. 17, 2014) ("The Confirmation Order vested

all the property of the Debtor's estate in a Liquidating Trust. This terminated the

automatic stay under both § 362(c)(1) and (2)[.]"); *N.J. Dep't of Envtl. Prot. v. IT*

---

[4]    Specifically, a Chapter 11 discharge does not discharge the debtor from certain non-dischargeable debts, 11 U.S.C. § 1141(d)(2), (6); confirmation does not discharge a corporate debtor that goes out of business and liquidates under the plan, *id.* § 1141(d)(3); and confirmation does not discharge a debtor that has executed a written waiver of discharge approved by the court, *id.* § 1141(d)(4).

*Litig. Tr. (In re IT Grp., Inc.)*, 339 B.R. 338, 342 (D. Del. 2006) (confirmation of Chapter 11 plan terminated automatic stay under § 362(c)(2)); *In re Greater Am. Land Res., Inc.*, 452 B.R. 532, 538 (Bankr. D.N.J. 2011) (same), *aff'd sub nom. Greater Am. Land Res., Inc. v. Town of Brick*, No. 11-cv-5308 (CCC), 2012 WL 1831563 (D.N.J. May 17, 2012); *Calderon v. Commodore Holdings Ltd.*, No. 02 Civ. 8273 (DC), 2004 WL 385062, at *2 (S.D.N.Y. Mar. 1, 2004) (same); *In re Good*, 428 B.R. 235, 242-43 (Bankr. E.D. Tex. 2010) (same).

Here, consistent with § 1141 of the Bankruptcy Code, the Plan provided that confirmation of the Plan terminated the bankruptcy estate and granted (or in certain cases, denied) the Debtors a discharge. *See* Plan [Bankr. D.I. 1004-1] at ¶ IV.E.1 (providing for vesting of the property of the estate in the Debtors or their successors under the Plan); *id.* ¶ X.C (providing that, "[p]ursuant to section 1141(d) of the Bankruptcy Code, … the Plan shall be in complete … discharge … of Claims … Interests, and Causes of Action against any Debtor of any nature whatsoever," except that those Debtors that were not Acquired Reorganized Debtors were denied a discharge).[5]

---

[5]   Although the Debtors asserted that all of the Debtors were entitled to a discharge, in response to objections by the U.S. Trustee that the Debtors were not eligible for a discharge under 11 U.S.C. § 1141(d)(3) because they were ceasing business operations and liquidating, the Debtors agreed to amend the Plan to provide that the Non-Acquired Reorganized Debtors would not receive a discharge. *See Debtors' Mem. of Law in Supp. of an Order Confirming the Debtors' Third Amended Joint Chapter 11 Plan* [Bankr. D.I. 950] at 70-71.

Because confirmation of the Plan thus terminated the bankruptcy estate and granted (or in certain cases denied) the Debtors a discharge, confirmation terminated the automatic stay under the express terms of § 362(c). *See* 11 U.S.C. § 362(c)(1)-(2).

Nothing in the automatic stay provision grants a bankruptcy court any authority to extend the automatic stay beyond the statutory term Congress prescribed. Nor do the provisions of Chapter 11. To the contrary, a Chapter 11 plan may contain only provisions that are "not inconsistent with the applicable provisions of this title [i.e., the Bankruptcy Code]." 11 U.S.C. § 1123(b)(6). Likewise, the bankruptcy court cannot confirm a plan unless it "complies with the applicable provisions of this title." *Id.* § 1129(a)(1).

If Congress had intended to provide a mechanism for courts to extend the automatic stay beyond what § 362(c)(1) and (c)(2) permit, it could easily have done so. For example, an immediately adjacent provision, § 362(c)(3), provides that when an individual debtor files a bankruptcy case within a year of the dismissal of a previous case, the "stay … shall terminate with respect to the debtor on the 30th day after the filing of the later case." 11 U.S.C. § 362(c)(3)(A). Section 362(c)(3) goes on to provide, however, that "the court may extend the stay in particular cases" if certain conditions are met. *Id.* § 362(c)(3)(B). There is no such provision allowing the court to extend the stay under § 362(c)(1) or (c)(2).

16

"[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Russello v. United States*, 464 U.S. 16, 23 (1983) (citation omitted).

Reading § 362(c) to mean what its plain language says is also consistent with the purpose of the automatic stay.  The automatic stay serves to "maintain the status quo and prevent dismemberment of the estate" until an orderly and fair division of the estate's value among creditors can be arranged.  *Ritzen Group, Inc. v. Jackson Masonry, LLC*, 140 S. Ct. 582, 589 (2020) (alterations in original omitted).  It is designed to give the debtor a temporary "breathing spell from creditors, to allow the debtor to begin the process of discharging his debts, and where applicable, to develop a repayment or reorganization plan."  *In re VistaCare Grp., LLC*, 678 F.3d 218, 231 (3d Cir. 2012) (citing H.R. Rep. No. 95-595, at 174 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6135); *see also In re Denby-Peterson,* 941 F.3d 115, 126 (3d Cir. 2019) ("It is well-established that one of the automatic stay's primary purposes is *to maintain the status quo* between the debtor and his creditors, thereby affording the parties and the Bankruptcy Court an opportunity to appropriately resolve competing economic interests in an orderly and effective way.") (internal citations and brackets omitted), *pet. for cert. filed sub nom. Denby-Peterson v. NU2U Auto World*, No. 19-1063 (U.S. Feb. 26, 2020);

17

H.R. Rep. No. 95-595, at 340-41; S. Rep. No. 95-989, at 49-50, 54 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5835, 5840.

Section 362(c) thus provides that the automatic stay terminates upon confirmation of a Chapter 11 plan because the stay's purpose has been served at that point.  Confirmation of a plan is the culmination of a Chapter 11 case.  The confirmed plan restructures the debtor's obligations to its creditors, resolving the debtor's financial distress, and the plan's terms are binding on all creditors and shareholders.  *See* 11 U.S.C. §§ 1123, 1141(a)-(d).  The stay's protections are designed to facilitate the process of reaching a confirmed plan, not to allow a reorganized debtor to gain an improper advantage over its adversaries in non-bankruptcy litigation after the plan confirmation process is complete.

Indeed, even if the automatic stay were properly still in effect, the Debtors' efforts to use the stay to gain a litigation advantage—by filing the coverage litigation in the Debtors' preferred forum while seeking to block the Insurers from filing a declaratory judgment action in a forum of their choosing—would be improper.  Even where the automatic stay is plainly in effect, courts have repeatedly emphasized that it must be used only as a "shield" rather than a "sword."  *See, e.g.*, *In re Scarborough-St. James Corp.*, 535 B.R. 60, 70 (Bankr. D. Del. 2015) ("Debtor is not seeking 'breathing room' from its litigation; it is continuing litigation… [I]t has filed an adversary proceeding in this court… Thus,

18

it appears that Debtor is not shying away from litigation; rather, Debtor seeks to litigate only issues of its choosing and in its preferred forum.  Debtor is using its bankruptcy case as a 'sword' and not a 'shield.'").  But here, the Debtors are not seeking to shield themselves from the assertion of claims *by* the Insurers; the Debtors are seeking to use the automatic stay as a sword to pursue their claims *against* the Insurers.  It is particularly improper for the Debtors to seek to use the automatic stay as a sword after the stay's legitimate bankruptcy purpose has expired and the stay has terminated under the Code's express terms.

Moreover, the Debtors cannot argue that extending the stay somehow serves the goal of reorganization.  The Debtors are not reorganizing but liquidating.  Their suit against the Insurers is being pursued solely for the benefit of the Liquidating Trust that will distribute the liquidation proceeds to creditors.  *See* Plan ¶¶ IV.E, IV.H.  Put differently, the stay is not even being extended to protect a reorganized debtor that is attempting to continue operating its business (which would itself be impermissible under the statute); it is being extended exclusively to gain an advantage in coverage litigation whose resolution will affect only how much money creditors of the estate will receive from the Debtors' liquidation.

In short, Section 362(c)'s express terms foreclose the Debtors' efforts to secure the protection of the automatic stay beyond confirmation of their Plan.  The Stay Order should be reversed.

## II.   THE BANKRUPTCY COURT'S AUTHORITY UNDER § 105 OF THE BANKRUPTCY CODE CANNOT BE USED TO OVERRIDE THE EXPRESS TERMS OF § 362

The bankruptcy court did not cite any statutory authority supporting its order approving the Plan's extension of the automatic stay.  As discussed, there is none. To the extent that the Debtors may seek to defend the Stay Order as an exercise of the bankruptcy court's "equitable" powers, codified in § 105 of the Bankruptcy Code, that argument fails.

Section 105 authorizes bankruptcy courts to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title [i.e., the Bankruptcy Code]."  11 U.S.C. § 105(a).  This provision has been construed to grant bankruptcy courts authority to take certain actions "to provide equitable relief appropriate to assure the orderly conduct of reorganization proceedings."  *In re Combustion Eng'g, Inc.*, 391 F.3d 190, 235-36 (3d Cir. 2005). But "the equitable powers authorized by § 105(a) are not without limitation."  *Id.* at 236.  Rather, "whatever equitable powers remain in the bankruptcy courts must and can only be exercised within the confines of the Bankruptcy Code."  *Law v. Siegel*, 571 U.S. 415, 421 (2014) (internal quotation marks omitted).

Thus, it is "hornbook law that § 105(a) does not allow the bankruptcy court to override explicit mandates of other sections of the Bankruptcy Code."  *Law*, 571 U.S. at 421 (internal quotation marks omitted).  "Section 105(a) confers authority

20

to 'carry out' the provisions of the Code, but it is quite impossible to do that by taking action that the Code prohibits." *Id.*; *Combustion Eng'g*, 391 F.3d at 236 ("The general grant of equitable power contained in § 105(a) cannot trump specific provisions of the Bankruptcy Code, and must be exercised within the parameters of the Code itself.").

Accordingly, courts have repeatedly held that § 105(a) grants no authority to disregard the substantive provisions of the Bankruptcy Code, even when the bankruptcy court concludes that doing so would achieve a more equitable result in a particular case.

For example, in *Law v. Siegel*, the Supreme Court held that the bankruptcy court "exceeded the limits of its authority under § 105(a)" when it required the debtor to pay administrative expenses from exempt property.  571 U.S. at 422-23. While the administrative expenses were incurred as a result of the debtor's fraudulent conduct, and the bankruptcy court thus viewed it as equitable to require the debtor to pay them, that relief "violated [11 U.S.C.] § 522's express terms," which provided that exempt property is not liable for administrative expenses.  *Id*. Accordingly, § 105(a) did not give the court the power to order such relief.

Similarly, in *Combustion Engineering*, the Third Circuit held that § 105(a) did not authorize the bankruptcy court to issue an injunction to enforce the terms of a Chapter 11 plan because the injunction contravened the specific terms of §

21

524(g) of the Bankruptcy Code.  391 F.3d at 236-37.  Even though the bankruptcy court believed the injunction would "facilitate [the debtor's] reorganization" and allow creditors to "benefit from an augmented fund," the Third Circuit held that "equity does not permit" the court to grant relief "in contravention of the plain language" of the Bankruptcy Code.  *Id.* at 237; *see id.* at 235-37 ("[T]he general powers of § 105(a) cannot be used to achieve a result not contemplated by the more specific provisions of § 524(g).").

The same is true here.  The plain language of § 362(c) provides that the automatic stay terminates upon "the earliest of"—not the "latest of"—"the time the case is closed" or "the time a discharge is granted or denied."  11 U.S.C. § 362(c)(2)(C).  The bankruptcy court's equitable powers under § 105(a) gave it no authority to disregard that statutory mandate and authorize what Congress specifically prohibited.

## III.   THE PLAN PROVISION EXTENDING THE AUTOMATIC STAY IS NOT A PERMISSIBLE PLAN INJUNCTION BARRING COLLECTION OF CLAIMS DISCHARGED OR RELEASED UNDER THE PLAN

Evidently recognizing that the Plan provision extending the automatic stay has no basis in law, the Debtors sought to recharacterize it as a typical plan injunction barring creditors whose claims are addressed by the plan from bringing debt-collection lawsuits outside the bankruptcy process.  At the confirmation hearing, the Debtors' counsel claimed that the Plan provision extending the

automatic stay was "not an extension of a stay," but rather an injunction "meant to facilitate claims administration":  "[I]n exchange for the treatment of various claims … under the plan, those claimholders … have to seek rights under … the plan. … [T]hat's a customary provision of plans …. [because] the debtor can't be faced with claims reconciliation and lawsuits in a thousand different courts." Confirmation Tr. at 97-98.

That argument conflates the Plan's provision extending the automatic stay with a very different provision enforcing the Plan's discharge and release of claims against the Debtors.  While the latter provision is indeed customary, it has no application here because the Insurers are not asserting any claim against the Debtors.  The only provision in the Plan preventing the Insurers from bringing a declaratory-judgment action against the Debtors is the provision extending the automatic stay, and that provision is neither customary nor lawful.

The Plan contains two different injunctions.  One is the injunction extending the automatic stay, to which the Insurers objected.  The second is an injunction barring creditors from seeking to collect claims discharged or released under the Plan, except to the extent permitted by the Plan.  That injunction provides that "Except with respect to the obligations arising under the Plan, … all Entities that held, hold, or may hold claims … that have been released, discharged, or exculpated pursuant to the Plan, are permanently enjoined … from …

commencing … any action or other proceeding of any kind on account of … any such claims" or taking other specified actions to collect such claims.  *See* Plan ¶ X.J.

That second sort of plan injunction is indeed common and is authorized under § 105(a) to "carry out the provisions" of § 524 and § 1141 of the Bankruptcy Code.  A plan of reorganization must specify how creditors' claims against the debtor will be treated under the plan, 11 U.S.C. § 1123(a)(1)-(4), and if the plan is confirmed, its provisions will be legally binding on creditors, *id.* § 1141(a). Furthermore, confirmation of the plan ordinarily discharges the debtor from debts for claims arising before confirmation.  *Id.* § 1141(d).  And the Bankruptcy Code provides that the discharge "operates as an injunction against the commencement … of an action … to collect … any such debt" that has been "discharged under section … 1141."  *Id.* § 524(a)(1)-(2).

The Plan's injunction against debt collection simply implements these provisions of the Code.  That sort of injunction does facilitate an efficient claims-administration process.  It prevents creditors from suing the Debtors in courts around the country to collect on claims that have been discharged or released under the Plan, relegating creditors instead to the treatment afforded those claims under the Plan.  Here, the Plan requires disputed or unliquidated claims to be resolved after plan confirmation pursuant to the Bankruptcy Code's claims-allowance

24

procedures, which are designed to facilitate an efficient claims process.  *See* Plan

art. IX; 11 U.S.C. §§ 501-502; Fed. R. Bankr. P. 3001-3008.

But the Plan's debt-collection injunction has no application here.  By its

terms, it applies only to "Entities that … hold claims … that have been released,

discharged, or exculpated pursuant to the Plan" and enjoins only "actions

against … the Debtors … on account of … such claims."  Plan ¶ X.J.  The Insurers

do not seek to assert any claim against the Debtors that has been discharged or

released under the Plan.  Rather, the Insurers seek to defend themselves *from*

claims for coverage by the Debtors.  If the Insurers were to commence an action

against the Debtors, it would not be on account of any discharged or released claim

against the Debtors, but would instead be a declaratory-judgment action to

determine the scope of the Insurers' coverage obligations to the Debtors under the

insurance policies.

The only provision in the Plan that prevents the Insurers from filing such an

action is the provision that purports to extend the automatic stay.  The automatic

stay is broader than the Bankruptcy Code's discharge injunction and stays the

commencement of any action against the Debtors that could have been commenced

before the bankruptcy filing, even if the action does not seek to collect a pre-

petition claim against the Debtors.  11 U.S.C. § 362(a)(1).  But, as described

above, the automatic stay is designed to give a Chapter 11 debtor only a temporary

"breathing spell" from litigation while it seeks to negotiate and confirm a plan of reorganization.  It comes to an end by its terms upon confirmation of the plan.  *Id.* § 362(c)(2)(C).

Thus, contrary to the Debtors' arguments, the Plan provision to which the Insurers objected *is* "an extension of a stay" (Confirmation Tr. at 98).  The provision explicitly states that "the automatic stay pursuant to section 362 of the Bankruptcy Code shall remain in full force and effect … until the closing of these Chapter 11 Cases."  Plan ¶ X.J.  And that provision has nothing to do with "facilitat[ing] claims administration," as the Debtors contend.  *See* Confirmation Hearing Tr. at 98.  Indeed, by its terms, the Plan's provision extending the automatic stay applies only to the Insurers, which are not asserting any claim against the Debtors at all.  *See* Plan ¶ X.J ("the automatic stay … shall remain in full force and effect with respect to … the Insurers").  Rather, the provision is designed to tilt the playing field in the Debtors' favor in their coverage disputes with the Insurers, blocking the Insurers from proceeding in any forum other than the Debtors' preferred forum.  That provision is not a "customary [plan] provision" enforcing a confirmed plan's discharge and release of creditor claims, like the Plan's debt-collection injunction, but an unlawful extension of the automatic stay in contravention of § 362's express terms.

## CONCLUSION

For the foregoing reasons, the Stay Order should be reversed.


Date: May 5, 2020                              Respectfully submitted,

                                               **WILMER CUTLER PICKERING**
                                                 **HALE AND DORR LLP**

                                                /s/ Craig Goldblatt
                                               Craig Goldblatt [Del. Bar. No. 6665]
                                               Danielle Spinelli
                                               Joel Millar
                                               1875 Pennsylvania Avenue, NW
                                               Washington, DC 20006
                                               Telephone: 202-663-6000
                                               craig.goldblatt@wilmerhale.com

                                               Benjamin W. Loveland
                                               60 State Street
                                               Boston, MA 02109
                                               Telephone: 617-526-6000
                                               benjamin.loveland@wilmerhale.com

                                               Allyson Pierce250 Greenwich Street
                                               New York, NY 10007
                                               Telephone:  212-230-8800
                                               allyson.pierce@wilmerhale.com


                                               *Counsel for Appellant Insurers*

## CERTIFICATION OF COMPLIANCE

Pursuant to Rule 8015 of the Federal Rules of Bankruptcy Procedure, the undersigned hereby certifies that this brief complies with the type-volume limitations of Federal Rule of Bankruptcy Procedure 8015(a)(7)(B)(i):

1.　　Exclusive of exempted portions of the brief, as provided by Federal Rule of Bankruptcy Procedure 8015(a)(7)(B), the brief contains 6,315 words.

2.　　The brief has been prepared in proportionally spaced typeface using Microsoft Word 2010 in 14-point Times Roman font.  As permitted by Federal Rule of Bankruptcy Procedure 8015(a)(7)(C), the undersigned has relied upon the word count feature of his word processing system in preparing this certificate.


 Dated:  May 5, 2020

/s/ Craig Goldblatt
_____
Craig Goldblatt
Counsel for the Appellants