# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| IN RE: PES HOLDINGS, LLC, et al., ) ) | |
| *Debtors*, ) ) | Civil Action No. 20-441-RGA |
| ACE AMERICAN INSURANCE ) COMPANY, et al. ) ) | |
| *Appellants*, ) ) | |
| v. ) ) | Bankruptcy Case No. 19-11626 |
| PES HOLDINGS, LLC, et al., ) ) | |
| *Appellees*. ) ) | |

## DEBTORS' RESPONSE BRIEF

MICHAEL B. SLADE
KIRKLAND & ELLIS LLP
300 North La Salle
Chicago, IL 60654
(312) 862-2000
michael.slade@kirkland.com

GEORGE W. HICKS, JR.
C. HARKER RHODES IV
MARIEL A. BROOKINS
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, NW
Washington, DC 20004
(202) 389-5000
george.hicks@kirkland.com
harker.rhodes@kirkland.com
mariel.brookins@kirkland.com

LAURA DAVIS JONES (DE BAR NO. 2436)
PACHULSKI, STANG, ZIEHL
 & JONES LLP
919 North Market Street, Suite 1700
P.O. Box 8705
Wilmington, DE 19899-8705
(302) 652-4100
ljones@pszjlaw.com

*Counsel for Debtors-Appellees*

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Rule 8012 of the Federal Rules of Bankruptcy Procedure, Appellees, the Debtors in the above-captioned chapter 11 cases, provide the following disclosure:

1.      Appellee PES Ultimate Holdings, LLC ("PES Ultimate") is 100% owned by Appellee PES Energy Inc.

2.      Through various private equity funds, Credit Suisse Asset Management LLC, a subsidiary of publicly traded Credit Suisse Group AG (NYSE: CS), owns in the aggregate more than 10% of the Class A equity interests of Appellee PES Energy Inc. Carlyle PES, LLC, a subsidiary of publicly traded The Carlyle Group (NASDAQ: CG), directly and indirectly owns in the aggregate more than 10% of the Class A equity interests of Appellee PES Energy Inc.

2.      Appellee PES Intermediate, LLC ("PES Intermediate") is 100% owned by PES Ultimate.

3.      Appellee PES Holdings, LLC ("PES"), the main debtor in the consolidated chapter 11 bankruptcy cases from which this appeal has been taken, is 99.99% owned by PES Ultimate, and 0.01% owned by PES Intermediate.

3.      Appellees Philadelphia Energy Solutions Refining and Marketing LLC ("PESRM"), North Yard Logistics, L.P. ("Logistics"), and North Yard GP, LLC, are

100% owned by PES.  North Yard GP, LLC, holds a 0% non-economic partner interest in Logistics.

4.     Appellee PES Administrative Services, LLC is 100% owned by PESRM.

# TABLE OF CONTENTS

INTRODUCTION ................................................................................... 1

QUESTION PRESENTED ..................................................................... 5

STATEMENT OF THE CASE................................................................. 5

    A.   Factual Background................................................................... 5

    B.   Legal Background and Procedural History ................................. 7

SUMMARY OF THE ARGUMENT .................................................... 13

ARGUMENT ....................................................................................... 16

I. The Bankruptcy Court Properly Exercised Its Broad Equitable Authority Under §105(a) To Enjoin The Insurers From Filing Duplicative Litigation In Another Forum While These Bankruptcy Cases Are Pending. ............................. 16

II. Section 362(c) Does Not Limit The Bankruptcy Court's Authority To Enjoin Post-Confirmation Litigation That Would Interfere With Pending Bankruptcy Proceedings. ...................................................................... 19

    A.   Section 362(c) Does Not Prohibit Bankruptcy Courts from Enjoining Outside Litigation Between Confirmation and Closing. ................. 20

    B.   Precedent and Legislative History Confirm that §362(c) Does Not Limit the Bankruptcy Court's Authority Under §105(a). ................................... 26

    C.   Routine Bankruptcy Practice Confirms that Bankruptcy Courts Have Authority To Extend the Automatic Stay After Confirmation. ................ 29

    D.   The Insurers' Remaining Arguments Are Equally Unpersuasive. ............ 33

CONCLUSION .................................................................................... 41

# TABLE OF AUTHORITIES

## Cases

*Biltmore Invs., Ltd. v. TD Bank, N.A.*,
  626 F. App'x 390 (4th Cir. 2015)......................................................27

*Denby-Peterson v. NU2U Auto World*,
  No. 19-1063 (filed Feb. 24, 2020) ..................................................36

*In re A.H. Robins Co.*,
  972 F.2d 77 (4th Cir. 1992)........................................................ 17, 18

*In re Aina Le'a, Inc.*,
  2019 WL 2274909 (Bankr. D. Haw. May 24, 2019) .........................32

*In re Alternate Fuels, Inc.*,
  789 F.3d 1139 (10th Cir. 2015) ......................................................25

*In re Asbestos Claims Mgmt. Corp.*,
  294 B.R. 663 (N.D. Tex. 2003)........................................................31

*In re ASHINC Corp.*,
  2015 WL 13646295 (Bankr. D. Del. Dec. 29, 2015)........................31

*In re Baldwin-United Corp. Litig.*,
  765 F.2d 343 (2d Cir. 1985)............................................................27

*In re Bayou Shores SNF, LLC*,
  828 F.3d 1297 (11th Cir. 2016) ......................................................31

*In re Berks Behavioral Health, LLC*,
  2010 WL 4852647 (Bankr. E.D. Pa. Sept. 30, 2010)........................32

*In re Blitz U.S.A., Inc.*,
  2014 WL 2582976 (Bankr. D. Del. Jan. 30, 2014) ...........................31

*In re Caesars Entm't Operating Co.*,
  808 F.3d 1186 (7th Cir. 2015) ............................................ 16, 17, 18

*In re Calpine Corp.*,
  365 B.R. 401 (S.D.N.Y. 2007) ........................................................27

*In re Caribe Media, Inc.*,
No. 11-11387 (Bankr. D. Del. Nov. 3, 2011) ......................................................31

*In re Combustion Eng'g, Inc.*,
391 F.3d 190 (3d Cir. 2004) ........................................................ 16, 19, 25, 26

*In re Conejo Enters., Inc.*,
96 F.3d 346 (9th Cir. 1996) ......................................................... 18, 39

*In re Dall. Stars, L.P.*,
2011 WL 5829885 (Bankr. D. Del. Nov. 18, 2011) ..........................................31

*In re DeLorean Motor Co.*,
991 F.2d 1236 (6th Cir. 1993) ............................................................17

*In re Denby-Peterson*,
941 F.3d 115 (3d Cir. 2019) ..............................................................36

*In re Enron Corp.*,
2006 WL 3140640 (Bankr. S.D.N.Y. Oct. 30, 2006) ........................................30

*In re Fairchild Corp.*,
2014 WL 7215211 (D. Del. Dec. 17, 2014) ................................................ 27, 30

*In re Fin. Oversight & Mgmt. Bd.*,
366 F. Supp. 3d 256 (D.P.R. 2019) ......................................................31

*In re FKF Madison Grp. Owner, LLC*,
2012 WL 13033640 (Bankr. D. Del. Apr. 10, 2012) .........................................31

*In re Friedman's Inc.*,
738 F.3d 547 (3d Cir. 2013) ..........................................................5, 37

*In re Gen. Wireless Operations Inc.*,
2017 WL 5461361 (Bankr. D. Del. Oct. 26, 2017) ...........................................31

*In re Hardeman Cty. Hosp. Dist.*,
540 B.R. 229 (Bankr. N.D. Tex. 2015) .............................................29

*In re IT Grp., Inc.*,
339 B.R. 338 (D. Del. 2006) .................................................... 27, 31

v

*In re Johns-Manville Corp.*,
   837 F.2d 89 (2d Cir. 1988) ........................................................................... 17, 19

*In re Kaiser Aluminum Corp.*,
   456 F.3d 328 (3d Cir. 2006) .................................................................................16

*In re Kaplan*,
   104 F.3d 589 (3d Cir. 1997) .................................................................................17

*In re Montreal Me. & Atl. Ry. Ltd.*,
   2015 WL 7431192 (Bankr. D. Me. Oct. 9, 2015) ................................................32

*In re Motors Liquidation Co.*,
   549 B.R. 607 (Bankr. S.D.N.Y. 2016) .................................................................30

*In re N.Y. Chocolate & Confections Co.*,
   2010 WL 4739715 (Bankr. N.D.N.Y. Sept. 10, 2010) ........................................32

*In re Nat'l Century Fin. Enters., Inc.*,
   2006 WL 620643 (B.A.P. 6th Cir. Mar. 14, 2006) ..............................................29

*In re NexPak Corp.*,
   2010 WL 5053973 (Bankr. D. Del. May 18, 2010) ..............................................29

*In re Oaks*,
   2012 WL 5717940 (Bankr. N.D. Ill. Nov. 15, 2012) ..........................................32

*In re PCAA Parent, LLC*,
   2010 WL 2745980 (Bankr. D. Del. May 17, 2010) ..............................................29

*In re PES Holdings, LLC*,
   No. 19-11626 (Bankr. D. Del.) ...............................................................................5

*In re Physiotherapy Holdings, Inc.*,
   No. 13-12965 (Bankr. D. Del. Dec. 23, 2013) .....................................................31

*In re Ross*,
   858 F.3d 779 (3d Cir. 2017) ....................................................................... *passim*

*In re Rue21, Inc.*,
   575 B.R. 90 (Bankr. W.D. Pa. Sept. 8, 2017) .....................................................32

*In re Sabine Oil & Gas Corp.*,
　2016 WL 11565432 (Bankr. S.D.N.Y. July 27, 2016) ........................................32

*In re Tex. Pellets, Inc.*,
　2019 WL 4253966 (Bankr. E.D. Tex. Sept. 6, 2019)..........................................31

*In re TK Holdings Inc.*,
　2018 WL 1306271 (Bankr. D. Del. Mar. 13, 2018)............................................31

*In re VistaCare Grp., LLC*,
　678 F.3d 218 (3d Cir. 2012) ................................................................................17

*In re Woodcrest Club, Inc.*,
　2010 WL 5053972 (Bankr. E.D.N.Y. Aug. 9, 2010)...........................................30

*Johnson v. Home State Bank*,
　501 U.S. 78 (1991)...............................................................................................16

*Kurz v. EMAK Worldwide, Inc.*,
　464 B.R. 635 (D. Del. 2011) ........................................................................ 18, 39

*Law v. Siegel*,
　571 U.S. 415 (2014)..................................................................................... *passim*

*Marrama v. Citizens Bank*,
　549 U.S. 365 (2007).............................................................................................16

*Monarch Life Ins. Co. v. Ropes & Gray*,
　65 F.3d 973 (1st Cir. 1995) ......................................................................... 17, 18

*New Jersey v. W.R. Grace & Co.*,
　412 B.R. 657 (D. Del. 2009)...............................................................................27

*Penn Terra Ltd. v. Dep't of Envtl. Res.*,
　733 F.2d 267 (3d Cir. 1984) ...............................................................................27

*PES Holdings, LLC v. Allianz Global Risks US Ins. Co.*,
　No. 20-50454 (Bankr. D. Del.) ............................................................................5

*Picard v. Fairfield Greenwich Ltd.*,
　762 F.3d 199 (2d Cir. 2014)...............................................................................27

*Queenie, Ltd. v. Nygard Int'l*,
   321 F.3d 282 (2d Cir. 2003) ...............................................................27

*Ritzen Grp., Inc. v. Jackson Masonry, LLC*,
   140 S. Ct. 582 (2020)........................................................................36

*Russello v. United States*,
   464 U.S. 16 (1983)............................................................................22

*Schrob v. Catterson*,
   948 F.2d 1402 (3d Cir. 1991).............................................................33

*U.S. Dep't of Air Force v. Carolina Parachute Corp.*,
   907 F.2d 1469 (4th Cir. 1990)............................................................26

*United States v. White*,
   466 F.3d 1241 (11th Cir. 2006) ............................................. 20, 30, 32

**Statutes**

11 U.S.C. §105 ............................................................... 5, 15, 16, 17

11 U.S.C. §1123 ...................................................................................9, 33

11 U.S.C. §1141 ............................................................... 8, 20, 30, 32

11 U.S.C. §1142 ...................................................................................33

11 U.S.C. §350 .....................................................................................8, 33

11 U.S.C. §362 ...................................................................... *passim*

11 U.S.C. §522 .....................................................................................24

11 U.S.C. §541 .....................................................................................33

28 U.S.C. §1334 ...................................................................................12

**Rules**

Fed. R. Bankr. P. 3022.........................................................................8

**Other Authorities**

2 *Collier on Bankruptcy* (16th ed. 2020) .............................................16

Douglas G. Baird,
   *Elements of Bankruptcy* (6th ed. 2014)................................................................28

H.R. Rep. No. 95-595 (1977)........................................................................... 28, 29

S. Rep. No. 95-989 (1978) ............................................................................. 28, 29

## INTRODUCTION

This appeal continues the ongoing campaign by Appellants Ace American Insurance Company *et al.* ("the Insurers") to avoid paying more than a billion dollars in insurance coverage that they clearly owe Appellees PES Ultimate Holdings, LLC *et al.* ("the Debtors") under the express terms of their insurance policies.  In June 2019, a catastrophic explosion destroyed the Debtors' refinery and drove them into bankruptcy.  Fortunately, the Debtors were insured against just such a catastrophe, with policies issued by the Insurers covering up to $1.25 billion in property damage and business interruption losses.   But instead of paying the amounts they indisputably owe, the Insurers have engaged in an extended program of feigning cooperation while delaying and attempting to avoid their commitments.

The insurance proceeds were *the* key asset of the Debtors' bankruptcy estates and remain a critical part of the Debtors' plan of reorganization.  In order to ensure the efficient resolution of any dispute relating to those proceeds, the bankruptcy court at confirmation approved a provision that extended the automatic stay as to the Insurers until the closing of these chapter 11 cases, thus prohibiting the Insurers from interfering with the ongoing bankruptcy proceedings by filing a duplicative declaratory judgment suit raising the same issues in a different court.  That injunction ensured that any dispute over the insurance policies would be adjudicated in an

orderly fashion in the currently pending adversary proceeding, rather than being entangled in simultaneous litigation in another forum.

The Insurers now appeal, claiming that the bankruptcy court had no statutory authority to enjoin them from disrupting the ongoing bankruptcy process by filing competing litigation in a different court that entirely duplicates ongoing litigation in which the Insurers are actively participating. According to the Insurers, the injunction here exceeds the bankruptcy court's broad equitable authority under §105(a) of the Bankruptcy Code, because §362(c) of the Code "expressly mandates" that the automatic stay must terminate upon confirmation, Br.1, and so extending the automatic stay to enjoin specific parties from filing disruptive litigation in other courts after that point "contravenes the express terms of the Bankruptcy Code," Br.4.

The Insurers' argument suffers from an obvious and fatal flaw: §362(c) does not say what the Insurers want it to say. As even a quick glance at the statutory text reveals, §362(c) does not say that a bankruptcy court "shall not stay any action against the debtor" after confirmation, or that the automatic stay "shall not be extended" past that point, or "shall continue only" to that point. 11 U.S.C. §362(c)(1)-(2). Even more telling, §362(c)(1) and (c)(2) do not even say the automatic stay "shall terminate" at confirmation—which is the mandatory language that Congress used in the very next subsection when it *did* intend to constrain the bankruptcy court's power to extend the stay further. Instead, §362(c)(1) and (c)(2)

2

simply provide that the automatic stay by its terms "continues" until confirmation, without in any way limiting the bankruptcy court's ability to extend it further, let alone to enjoin particular parties from filing disruptive litigation after that point.

Unable to succeed under the clear statutory text, the Insurers resort to negative implication. They argue that in providing that the automatic stay "continues" until confirmation, Congress must have intended to implicitly limit the bankruptcy court's broad equitable power under §105(a) to extend it farther. That cannot be, given that the language the Insurers are reading into §362(c)(1) and (c)(2) appears in the very *next* provision, but *not* in the provisions at issue here. Moreover, as both the Supreme Court and the Third Circuit have made clear, a strained argument by negative implication will not justify imposing atextual restrictions on the plain language of §105(a). Instead, the bankruptcy court's broad authority under §105(a) is limited only when it would conflict with "'specific,' 'explicit,' and 'express' terms of the Bankruptcy Code"—not dubious inferences from those express terms. *In re Ross*, 858 F.3d 779, 784 (3d Cir. 2017) (quoting *Law v. Siegel*, 571 U.S. 415, 421-22 (2014)).

Countless cases and the legislative history of §362 confirm the point, explaining in detail that the limitations on the automatic stay under §362 do not constrain the bankruptcy court's power under §105. And routine bankruptcy practice agrees: In this District and across the country, bankruptcy courts in numerous cases

have routinely extended the automatic stay past confirmation of a plan.  By contrast, the Insurers cannot cite a *single case* holding that a bankruptcy court lacks the power to enjoin disruptive outside litigation by extending the automatic stay past confirmation and through the closing of the bankruptcy case.  The Insurers' policy arguments are equally unpersuasive; while the purposes of the automatic stay will often be adequately served by continuing that stay only through confirmation, that is hardly a reason to deprive bankruptcy courts of their power under §105(a) to extend the stay when that relief is necessary to ensure an orderly bankruptcy process. And in this case in particular, the Insurers have no plausible justification for their desire to file duplicative litigation in a different court when the same dispute is already pending in an adversary proceeding in the bankruptcy court—and has already advanced past the pleadings stage to discovery in that adversary proceeding, without any attempt by the Insurers to move to dismiss, withdraw the reference, or file counterclaims.

In short, the Insurers' position cannot be reconciled with the statutory text, controlling precedent, routine bankruptcy practice, or sound policy.  The bankruptcy court's injunction order was well within both its statutory authority and its broad equitable discretion, and this Court should affirm.

4

## QUESTION PRESENTED

Whether the bankruptcy court properly exercised its broad equitable authority under 11 U.S.C. §105(a) to enjoin the Insurers from interfering with the bankruptcy process by bringing duplicative litigation against the Debtors in a different forum before the closing of the Debtors' chapter 11 cases.

This Court reviews a bankruptcy court's exercise of its discretion under §105(a) for abuse of discretion, and reviews its legal determinations *de novo*. *See, e.g.*, *In re Friedman's Inc.*, 738 F.3d 547, 551-52 (3d Cir. 2013).

## STATEMENT OF THE CASE

### A.    Factual Background

The Debtors operated the largest refining complex on the East Coast—a complex that sat on a 1300-acre industrial site near downtown Philadelphia, and had been continuously operating in various forms for over 150 years. Corrected Disclosure Statement for the Joint Chapter 11 Plan of PES Holdings, LLC and its Debtor Affiliates ("Disclosure Statement"), Bankr.Dkt.465, at 4.[1] That complex was comprised of two interrelated refineries—the Girard Point refinery and the Point Breeze refinery—with a combined refining capacity of 335,000 barrels of crude oil

---

[1]    "Bankr.Dkt." refers to entries on the bankruptcy docket below, *In re PES Holdings, LLC*, No. 19-11626 (Bankr. D. Del.). "Adv.Proc.Dkt." refers to entries in the related adversary proceeding, *PES Holdings, LLC v. Allianz Global Risks US Ins. Co.*, No. 20-50454 (Bankr. D. Del.).

per day, which represented approximately 28 percent of the crude oil refining capacity of the entire East Coast.  *Id.*

Early on June 21, 2019, however, a catastrophic explosion occurred at the alkylation unit of the Girard Point facility.  *Id.*; *see* Complaint, Adv.Proc.Dkt.1, at 21.  That explosion rendered the Girard Point refinery wholly inoperable, and left the Point Breeze refinery with severely limited capacity.  Disclosure Statement at 5. On July 21, 2019, as a result of this catastrophe, the Debtors filed for bankruptcy under chapter 11.  *Id.* Their cases were assigned to Judge Kevin Gross, a distinguished and experienced bankruptcy judge who had served on the bankruptcy court for this District for thirteen years.  *See* Bankr.Dkt.Entry (July 22, 2019) (assigning Judge Gross); Transcript of February 12, 2020 Hearing ("Confirmation Tr."), Bankr.Dkt.1007, at 99 (noting Judge Gross's "distinguished tenure").

The Debtors carried substantial insurance policies to protect themselves and their stakeholders against the possibility of just such a catastrophic incident.  In total, the Debtors held policies from the Insurers providing a combined $1.25 billion in coverage for property damage and business interruption losses.  Disclosure Statement at 28.  Given the massive physical damage that the explosion caused to the Girard Point facility, and the accompanying shutdown of refining operations, the Debtors informed the Insurers from day one that the total property damage and business interruption losses suffered would likely exceed the Debtors' coverage

limit—coverage that the Debtors had bargained and paid for annually since 2012. Complaint at 4. Those insurance proceeds "are the very heart of these chapter 11 cases," and critically important in order for the Debtors to be able to complete the bankruptcy process and close the pending chapter 11 proceedings. Disclosure Statement at 28.

Rather than paying those proceeds, the Insurers have engaged in an extended campaign to feign cooperation while attempting to avoid their clear coverage commitments under the Debtors' policies. *See* Complaint at 4, 25-30. Instead of promptly determining and disbursing the amounts they owe, the Insurers have imposed repeated and onerous requests on the Debtors as part of a deliberately prolonged "adjustment" process designed to delay any payment to the Debtors under their policies. *Id.* Despite full cooperation from the Debtors, the Insurers to date have paid Debtors only a fraction of what is owed, falling more than a billion dollars short of their commitments. *See id.* at 4, 25-28; Bankr.Dkt.1047, 1061, 1264.

**B.    Legal Background and Procedural History**

In order to preserve the integrity of the bankruptcy process, and protect debtors from facing manifold simultaneous lawsuits in various forums, the Bankruptcy Code imposes an automatic stay that prohibits the commencement of any "judicial, administrative, or other action or proceeding against the debtor" in any forum. 11 U.S.C. §362(a)(1). That automatic stay ensures that unless the bankruptcy

court decides otherwise (and subject to specified statutory exceptions), all disputes relating to a bankrupt debtor and its property will be resolved in the bankruptcy process, not in scattered litigation in multiple different courts.  By its terms, the automatic stay arises immediately upon the filing of a bankruptcy petition, *id.* §362(a), and remains in effect without any need for further judicial action "until the earliest of (A) the time the case is closed; (B) the time the case is dismissed, or (C) if the case is a case under [chapter 11], the time a discharge is granted or denied," *id.* §362(c)(2).

In chapter 11 cases, a discharge is granted or denied when the bankruptcy court confirms a plan of reorganization.  *Id.* §1141(d).  But confirmation does not mark the end of the chapter 11 process; that process as a whole does not conclude, and a chapter 11 case does not close, until the estate is "fully administered," generally meaning that creditors' claims have been resolved, property belonging to the estate has been distributed, and any necessary post-confirmation administrative matters have been completed.  *Id.* §350(a); *see* Fed. R. Bankr. P. 3022.

In January 2020, the Debtors filed an amended plan of reorganization with the bankruptcy court.  Second Amended Joint Chapter 11 Plan of PES Holdings, LLC and its Debtor Affiliates, Bankr.Dkt.827.  That plan included a standard provision enjoining all creditors whose claims were discharged under the plan from filing suit against the Debtors or the entities remaining after the Debtors' reorganization (the

Non-Acquired Reorganized Debtors and the Liquidating Trust) in any court on account of those discharged claims. *Id.* ¶X.H.[2]  In addition, in light of the overwhelming importance to these chapter 11 cases of the more than $1 billion in insurance proceeds that the Debtors are owed—and the growing likelihood of litigation with the Insurers over those proceeds—the same paragraph of the plan also included a provision ensuring that the bankruptcy court would be able to resolve any dispute over the outstanding insurance proceeds without interference from concurrent litigation in other courts.  That provision stated that the automatic stay would "remain in full force and effect with respect to … the Insurers … until the closing of these Chapter 11 Cases," preventing the Insurers from seeking to disrupt the bankruptcy process by bringing a new declaratory judgment suit against the Debtors in a different forum.  *Id.*; *see* 11 U.S.C. §1123(b)(6) (plan may include "any other appropriate provision not inconsistent with the applicable provisions of [the Code]").

The Insurers filed an objection to the plan, arguing that the bankruptcy court had no power to enjoin the Insurers from suing the Debtors in a different forum while the bankruptcy process was still ongoing by extending the automatic stay beyond

---

[2] For ease of reference, unless the context indicates otherwise, any mention in this brief of any potential suit by the Insurers against the Debtors should be understood as including any potential suit by the Insurers against the Non-Acquired Reorganized Debtors or the Liquidating Trust.

confirmation.   Objection and Reservation of Rights of Multiple Insurers to the Second Amended Joint Chapter 11 Plan, Bankr.Dkt.928, at 6-9.   The Debtors responded in their brief in support of confirmation, explaining that the challenged provision was necessary and appropriate under the particular circumstances presented here, where the insurance owed was an "integral aspect of the case that may become the majority of the recognized recoveries of the plan" and the bankruptcy proceedings would not be complete until any dispute over the insurance amount was resolved.   Debtors' Mem. of Law in Support of an Order Confirming the Debtors' Third Amended Joint Chapter 11 Plan of Reorganization of PES Holdings, LLC and Its Debtor Affiliates, Bankr.Dkt.950, ¶¶175-77.

After hearing oral argument at the confirmation hearing, Judge Gross overruled the Insurers' objection, determining that the Insurers should not be free to "jump in and file litigation" at will against the Debtors in a different forum while these chapter 11 cases were still pending.   Confirmation Tr.137; *see id.* at 98 (counsel for the Debtors explaining that "as part of the goals of the bankruptcy, the debtor can't be faced with … lawsuits in a thousand different courts").   At the same time, Judge Gross confirmed that the Insurers would still have the ability to ask the bankruptcy court to lift the stay and allow the Insurers to file suit against the Debtors in a different forum if the circumstances made that course appropriate.   Confirmation Tr.99-100.

10

On the following day, Judge Gross confirmed an amended version of the plan that incorporated various changes in response to issues raised by other parties at the confirmation hearing.  Order Confirming the Fourth Amended Joint Chapter 11 Plan of PES Holdings, LLC and its Debtor Affiliates ("Confirmation Order"), Bankr.Dkt.1004.  The confirmed version of the plan included the same provision enjoining the Insurers from commencing a new declaratory judgment suit against the Debtors while these bankruptcy proceedings are still pending by keeping the automatic stay in place as to the Insurers until the closing of these chapter 11 cases.  *See* Fourth Amended Joint Chapter 11 Plan of PES Holdings, LLC and Its Debtor Affiliates ("Plan"), Confirmation Order Ex.A, Bankr.Dkt.1004-1, ¶X.J.  To ensure that the Insurers could appeal on that issue without challenging the rest of the plan, the confirmed plan also stated that this provision would be "effectuated by a separate order submitted by the Debtors."  *Id.*; *see* Transcript of March 17, 2020 Hearing, Bankr.Dkt.1105, at 6-7.

Shortly after entering his confirmation order in this case, Judge Gross retired, and the case was reassigned to Judge Laurie Silverstein.  Bankr.Dkt.1014.  Judge Silverstein proceeded to issue the injunction order envisioned by the confirmed plan. Transcript of March 17, 2020 Hearing, Bankr.Dkt.1105, at 6-7.  That order—which was issued on March 18, 2020, and which is the order on appeal here—provides that "the injunctive relief set forth in Article X of the Plan shall remain in full force and

effect with respect to … the Insurers … until the closing of these Chapter 11 cases." Order Regarding Application of Injunction ("Injunction Order"), Bankr.Dkt.1097, at 2. The injunctive relief in Article X of the Plan includes the provision in Plan ¶X.J that the Insurers challenge.

In the meantime, in light of the Insurers' continued unwillingness to pay the Debtors the more than $1 billion that the Insurers plainly owe—and in order to resolve that dispute over the insurance proceeds as quickly and efficiently as possible—the Debtors filed an adversary proceeding in the bankruptcy court, asking that court to declare the Insurers' liability under their policies and award the Debtors the amounts they are owed. *See* Complaint. That adversary proceeding has now been in active litigation for more than four months. In that time, the Insurers have made no attempt to dismiss that adversary proceeding for lack of jurisdiction; in fact, the Insurers admitted that the proceeding falls within this Court's "related-to" jurisdiction under 28 U.S.C. §1334(b). Answer ¶10, Adv.Proc.Dkt.20. Nor have the Insurers made any attempt to withdraw the reference, or filed any counterclaims for declaratory judgment. Instead, the Insurers filed their answer on March 27, 2020, and the parties are in the midst of active discovery. The bankruptcy court has also granted a motion to intervene by ICBC Standard Bank Plc ("ICBCS"), an additional insured under the policies at issue, and discovery is proceeding with respect to that aspect of the suit as well. *See* Adv.Proc.Dkt.30, 54.

## SUMMARY OF THE ARGUMENT

Section 105(a) of the Bankruptcy Code grants bankruptcy courts broad equitable authority to enter any order that is necessary or appropriate to carry out their duties under the Code. As numerous courts (including the Third Circuit) have recognized, that includes the power to enjoin litigation in other courts that could interfere with the efficient resolution of pending bankruptcy proceedings. The injunctive relief that the bankruptcy court issued here was well within its discretion under that broad authority. It prohibits the Insurers (absent leave of court) from interfering with the pending chapter 11 cases by filing a duplicative declaratory judgment suit against the Debtors in a different forum, thus ensuring that the parties' dispute over the insurance proceeds—an issue at "the very heart of these chapter 11 cases," Disclosure Statement at 28—will not be disrupted or delayed by simultaneous litigation in another court.

The Insurers do not dispute that, as a general matter, §105(a) authorizes a bankruptcy court to enjoin disruptive outside litigation, and do not contend that the bankruptcy court here abused its discretion in finding that the circumstances in this case warranted such an injunction. Instead, they argue only that the court had no statutory authority to enter that injunction, because (according to the Insurers) §362(c) prohibits extending the automatic stay past confirmation.

The Insurers' argument ignores the statutory text.  Section 362(c)(1) and (c)(2) do not say that the automatic stay "shall not be extended" past confirmation, or "shall continue only" to confirmation, or "shall terminate" at confirmation; they say only that the automatic stay automatically "continues" until confirmation, without limiting the bankruptcy court's power to extend it further under appropriate circumstances.  That stands in marked contrast to the very next subsection, where Congress *did* limit the bankruptcy court's authority by mandating that the stay "shall terminate" under certain circumstances not applicable here.  The statutory text thus demonstrates beyond any doubt that Congress knew full well how to set boundaries on the bankruptcy court's power to extend the stay, and consciously chose not to do so in §362(c)(1) and (c)(2).

The Insurers' attempt to limit the bankruptcy court's powers under §105(a) by negative implication—by arguing that because §362(c) only "continues" the automatic stay until confirmation, Congress implicitly prohibited bankruptcy courts from extending it further—is foreclosed by established Third Circuit precedent. Nothing in the bankruptcy court's order here conflicts with any "'specific,' 'explicit,' and 'express' terms of the Bankruptcy Code." *Ross*, 858 F.3d at 784 (quoting *Law*, 571 U.S at 421-22), and the Insurers' efforts to create a conflict by tacit inference are insufficient as a matter of law.

14

Other precedent and legislative history confirm the same point, making clear that the limitations in §362 on the automatic stay do not implicitly limit the bankruptcy court's power under §105(a).  The Insurers' position also conflicts with routine bankruptcy practice, as numerous bankruptcy courts in this District and across the country have regularly extended the automatic stay past confirmation in countless cases.  By contrast, the Insurers do not and cannot cite a single case holding that a bankruptcy court exceeded its authority by taking that step.

Nor do the Insurers' policy arguments carry any weight.  The fact that the automatic stay *usually* is not needed beyond confirmation is hardly a reason to prohibit the bankruptcy court from extending that stay when it *is* needed.  The Insurers do not meaningfully argue that the bankruptcy court abused its discretion in determining that the injunction it entered was warranted to prevent the Insurers from disrupting the bankruptcy process, and do not try to explain why the duplicative suit they seek to file would be either fairer or more efficient than just allowing the pending adversary proceeding in which they are actively participating (and in which they have had every opportunity to file whatever declaratory judgment counterclaims they may want to raise) to proceed to its conclusion.  If the Insurers nevertheless genuinely believe they have good grounds for filing a duplicative suit to litigate these issues in a different court, they should ask the bankruptcy court to

lift the stay—not claim that the injunction itself is somehow invalid *ab initio*. The bankruptcy court's injunction order should be affirmed.

## ARGUMENT

**I.     The Bankruptcy Court Properly Exercised Its Broad Equitable Authority Under §105(a) To Enjoin The Insurers From Filing Duplicative Litigation In Another Forum While These Bankruptcy Cases Are Pending.**

Section 105(a) grants bankruptcy courts the authority to enter "any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. §105(a). As both the Supreme Court and the Third Circuit have repeatedly recognized, that section provides bankruptcy courts "broad equitable power" to issue any decrees that are necessary and appropriate to ensure an effective and efficient bankruptcy process. *Johnson v. Home State Bank*, 501 U.S. 78, 88 (1991); *see, e.g.*, *Marrama v. Citizens Bank*, 549 U.S. 365, 375 (2007); *In re Kaiser Aluminum Corp.*, 456 F.3d 328, 339-40 (3d Cir. 2006); *In re Combustion Eng'g, Inc.*, 391 F.3d 190, 236 (3d Cir. 2004) (section 105(a) creates "'broad authority' to provide equitable relief appropriate to assure the orderly conduct of reorganization proceedings"). That authority is given an "expansive construction," in light of the "broad mandate to bankruptcy courts generally to reorganize debtors, to afford a fresh start to debtors and to distribute funds equitably to creditors." 2 *Collier on Bankruptcy* ¶105.01[2] (16th ed. 2020); *see also, e.g.*, *In re Caesars Entm't Operating Co.*, 808 F.3d 1186, 1188 (7th Cir. 2015) (section

16

105(a) grants "the extensive equitable powers that bankruptcy courts need in order to be able to perform their statutory duties").

The bankruptcy court's broad powers under §105(a) include the ability to enjoin litigation in other courts that could interfere with efficient resolution of the pending bankruptcy proceedings. That authority "has been construed liberally to enjoin suits that might impede the reorganization process." *In re Johns-Manville Corp.*, 837 F.2d 89, 93 (2d Cir. 1988); *see, e.g.*, *Caesars Entm't*, 808 F.3d at 1188-89; *Monarch Life Ins. Co. v. Ropes & Gray*, 65 F.3d 973, 978-79 (1st Cir. 1995); *In re A.H. Robins Co.*, 972 F.2d 77, 82 (4th Cir. 1992) ("Staying third party litigation is within the broad equity powers granted bankruptcy courts under 11 U.S.C. §105(a)."). Thus, as the Third Circuit has noted, "a bankruptcy court may issue injunctive relief [under §105(a)] 'where parties are pursuing actions pending in other courts that threaten the integrity of a bankrupt's estate.'" *In re VistaCare Grp., LLC*, 678 F.3d 218, 231 n.11 (3d Cir. 2012) (quoting *In re DeLorean Motor Co.*, 991 F.2d 1236, 1242 (6th Cir. 1993)); *see In re Kaplan*, 104 F.3d 589, 595 (3d Cir. 1997) (bankruptcy court "has the power under section 105 to enjoin creditors from proceeding in a state court against third parties where failure to enjoin would affect the bankruptcy estate"). Other courts have likewise found injunctive relief warranted under §105(a) to stay litigation that "would 'interfere in the rehabilitative process,'" *In re A.H. Robins Co.*, 972 F.2d at 82, "threatens to adversely affect the

17

interests of the debtor or the reorganization effort," *id.*, will "endanger the success of the bankruptcy proceedings," *Caesars Entm't*, 808 F.3d at 1188-89, or would "entail or threaten adverse impact on the administration of the chapter 11 estate," *Monarch Life*, 65 F.3d at 979 (emphasis omitted).

The injunctive relief that the bankruptcy court issued here was well within its discretion under that broad equitable authority.  Its injunction prohibits the Insurers, absent leave of court, from interfering with the bankruptcy process by bringing a duplicative declaratory judgment suit (or any other suit) against the Debtors in a different forum while these chapter 11 cases remain pending.  That injunction serves the obvious and sensible purpose of ensuring that the parties' dispute over the insurance proceeds—an issue at "the very heart of these chapter 11 cases," Disclosure Statement at 28—can be quickly and efficiently resolved in the pending adversary proceeding.  Conversely, it prevents the Insurers from distracting the parties and delaying the bankruptcy process by bringing simultaneous litigation over the same issues in a different court, indefinitely postponing the closing of these chapter 11 cases.  *See In re Conejo Enters., Inc.*, 96 F.3d 346, 353 (9th Cir. 1996) (bankruptcy court decision to stay a state-court suit "promoted judicial economy and efficiency by minimizing the duplication of litigation in two separate forums"); *Kurz v. EMAK Worldwide, Inc.*, 464 B.R. 635, 647 (D. Del. 2011) (consolidating litigation before the bankruptcy court "avoid[s] piecemeal litigation and … assur[es] the most

efficient and economic administration of the debtor's estate").  That is precisely the kind of appropriate equitable relief "to assure the orderly conduct of reorganization proceedings" that §105(a) exists to authorize.  *Combustion Eng'g*, 391 F.3d at 236; *cf. Johns-Manville Corp.*, 837 F.2d at 94 (noting the "fundamental" bankruptcy principle of "preserving the debtor's estate for the creditors and funneling claims to one proceeding in the bankruptcy court").

## II.  Section 362(c) Does Not Limit The Bankruptcy Court's Authority To Enjoin Post-Confirmation Litigation That Would Interfere With Pending Bankruptcy Proceedings.

The Insurers do not dispute that, as a general matter, §105(a) grants bankruptcy courts the power to enjoin litigation that would interfere with ongoing bankruptcy proceedings.  Nor do they argue that under the particular circumstances of this case, the bankruptcy court abused its discretion by finding that such an injunction was warranted here.  Indeed, the Insurers do not even cite the abuse-of-discretion standard that would apply to such a challenge.  *See* Br.5 (asserting that the question presented is "a purely legal issue of statutory interpretation, which this court reviews *de novo*"); *cf. Ross*, 858 F.3d at 783 (issuing an injunction under §105(a) "is an exercise of discretion").

Instead, the Insurers argue only that the bankruptcy court had no statutory authority to issue the challenged injunction, because (they contend) §362(c) of the Bankruptcy Code implicitly limits the bankruptcy court's authority under §105(a) to

enjoin litigation in other courts after plan confirmation.   Br.5; *see* Br.20-22. According to the Insurers, in confirming a plan, the bankruptcy court cannot use its broad authority under §105(a) to enjoin specific parties from filing litigation that would interfere with the rest of the bankruptcy process—or at least cannot phrase its injunction as an order that "the automatic stay … shall remain in full force and effect" as to those parties.   Plan ¶X.J; *see* Br.20-22.   That assertion is wholly unpersuasive.

### A. Section 362(c) Does Not Prohibit Bankruptcy Courts from Enjoining Outside Litigation Between Confirmation and Closing.

The Insurers hang their entire argument on a negative implication from §362(c) of the Bankruptcy Code, which sets the default point through which the automatic stay automatically continues.   *See* Br.12-13, 22.   As relevant here, that subsection provides that with respect to acts against property of the estate, the automatic stay "continues until such property is no longer property of the estate," 11 U.S.C. §362(c)(1); and with respect to all other acts, the automatic stay "continues until the earliest of (A) the time the case is closed; (B) the time the case is dismissed; or (C) if the case is a case under [chapter 11], the time a discharge is granted or denied," *id.* §362(c)(2), which occurs when the plan is confirmed, *see id.* §1141(d); *United States v. White*, 466 F.3d 1241, 1244 (11th Cir. 2006).

As even a cursory glance at that provision shows, nothing in the statutory text of §362(c)(1) and (c)(2) sets any express limit on a bankruptcy court's power under

§105(a) to enjoin outside litigation even after confirmation.  Section 362(c)(1) and (c)(2) do not say that the bankruptcy court "shall not stay any act against the debtor after a discharge is granted or denied," or that the automatic stay "shall not be extended" after that point, or "shall continue only" to that point.  Instead, §362(c)(1) and (c)(2) set a default baseline: they provide that the stay automatically "continues" until the earliest of closing, dismissal, or (in chapter 11 cases) confirmation, without in any way limiting the ability of the bankruptcy court to use its other powers to extend the stay or enjoin other litigation after that point.  11 U.S.C. §362(c)(1)-(2).  That is, §362(c)(1) and (c)(2) just provide a *default rule* for when the automatic stay will end *absent some action by the bankruptcy court*; they nowhere prohibit the bankruptcy court from extending that stay further, or enjoining other post-confirmation litigation that would interfere with a successful final resolution of the bankruptcy proceedings.

That plain-text reading is confirmed by comparison with the immediately adjacent statutory language in §362(c)(3), where Congress *did* set a limit on the bankruptcy court's power to extend the stay in certain circumstances.  In that subsection, as the Insurers themselves describe, Congress provided that when an individual debtor files a bankruptcy case within a year of the dismissal of a previous case, the automatic stay "*shall terminate*" thirty days after the filing of the later case, subject to certain limited exceptions.  *Id.* §362(c)(3)(A)-(B) (emphasis added); *see*

Br.16-17.  No similar "shall terminate" language appears in §362(c)(2)—for the simple reason that Congress did not intend §362(c)(2) to limit the bankruptcy court's authority to extend the stay beyond that point.  To quote the Insurers, "[w]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." Br.17 (quoting *Russello v. United States*, 464 U.S. 16, 23 (1983)).

The Insurers nevertheless attempt to read §362(c)(1) and (c)(2) to say something they plainly do not, repeatedly claiming (with no support in the statutory text) that those subsections actually "mandat[e] that the automatic stay must terminate upon plan confirmation." Br.4.[3]  They contend that in setting their default rule that the automatic stay "continues" until the earliest of closing, dismissal, or confirmation, §362(c)(1) and (c)(2) implicitly deprive the bankruptcy court of its power under §105(a) to enjoin litigation in other courts between confirmation and closing—or at least preclude describing such an injunction as an extension of the automatic stay.  That strained argument by negative implication is barred by established precedent.

---

[3]    Indeed, the Insurers say more than a dozen times in their brief that §362(c)(1) and (c)(2) "terminate" the automatic stay at confirmation—language found nowhere in either of those provisions.  *See* Br.1, 3, 4, 5, 8, 10, 12, 13, 14, 16, 18, 19, 22.

It is certainly true that a bankruptcy court's broad authority under §105(a) "does not extend to actions that conflict with 'specific,' 'explicit,' and 'express' terms of the Bankruptcy Code." *Ross*, 858 F.3d at 784 (quoting *Law*, 571 U.S. at 421-22). But as explained above, nothing in the "specific," "explicit," and "express" terms of §362(c) (or any other Code provision) prohibits a bankruptcy court from enjoining outside litigation by particular parties between confirmation and closing, or from describing that injunction as an extension of the automatic stay. Under settled law, the Insurers' attempt to limit the bankruptcy court's powers under §105(a) by reading a dubious negative implication into the plain text of §362(c) cannot succeed.

The Third Circuit's recent decision in *Ross*—which the Insurers do not mention—illustrates the point. In *Ross*, the bankruptcy court exercised its general authority under §105(a) to enjoin the debtor from filing any further bankruptcy petition without leave of court. 858 F.3d at 782. On appeal, the debtor argued that injunction exceeded the bankruptcy court's authority under §105(a), because it would undermine several other Bankruptcy Code provisions that specifically address the problem of repeat-filers and bad-faith debtors. *Id.* at 784. The Third Circuit squarely rejected that approach, explaining that the debtor's argument by tacit inference was not enough to limit the scope of §105(a); instead, "all that matters is the 'express' and 'explicit' terms of the Bankruptcy Code." *Id.* Because there was

23

"nothing in the text of the Code that prohibited the bankruptcy court's order," that order did not exceed the court's authority under §105(a).  *Id.* at 785 (brackets and quotation marks omitted).  The exact same analysis applies here:  Nothing in the explicit and express terms of §362(c) or any other Code provision prohibits the bankruptcy court from enjoining particular parties from filing litigation in other courts between confirmation and closing, let alone from describing that injunction as an extension of the automatic stay, and so that action remains within the bankruptcy court's power under §105(a).

The Insurers rely primarily on *Law v. Siegel*, *see* Br.20-21, but that case only underscores the flaw in their argument.  As the Third Circuit emphasized in *Ross*, the Supreme Court in *Law* faced a case where the bankruptcy court had attempted to use its authority under §105(a) to violate the "'explicit mandates' and 'express terms'" of the Code.  *Ross*, 858 F.3d at 785 (quoting *Law*, 571 U.S. at 421-22).  In *Law*, the Code entitled the debtor to exempt $75,000 of equity in his home from the bankruptcy estate, and explicitly made that amount "not liable for payment of any administrative expense."  571 U.S. at 422 (citing 11 U.S.C. §522(k)).  The bankruptcy court nevertheless relied on §105(a) to charge administrative expenses against the debtor's homestead exemption.  By violating the "express terms" of the Code, the Court held, the bankruptcy court in *Law* "exceeded the limits of its authority under §105(a)."  *Id.* at 422-23.  This case presents the opposite scenario:

24

nothing in the "explicit mandates" and "express terms" of the Code prohibits a bankruptcy court from extending the automatic stay, and the Insurers' attempt to derive that prohibition by negative inference does not suffice to limit the bankruptcy court's power under §105(a). *Id.* at 421-22; *see, e.g.*, *In re Alternate Fuels, Inc.*, 789 F.3d 1139, 1149 (10th Cir. 2015) ("*Law* held simply that a court may not employ §105(a) to override other *explicit mandates* in the Bankruptcy Code." (emphasis added)).

So too for the Third Circuit's earlier decision in *Combustion Engineering*, which the Insurers also cite. *See* Br.21-22. That case arose in the context of a debtor company and its affiliates who faced significant potential liabilities from pending and future asbestos lawsuits. 391 F.3d at 201. Section 524(g) of the Code specifically addresses "the unique problems and complexities associated with asbestos liability," and provides the precise terms under which a bankruptcy court may enter a "channeling injunction" requiring that future asbestos claims against third parties must be brought against a personal injury trust. *Id.* at 234-35. Despite "[r]ecognizing the limitations" imposed by §524(g), the bankruptcy court in *Combustion Engineering* relied on its general authority under §105(a) to "expand the scope of the channeling injunction" to third parties not covered by that section. *Id.* at 235. The Third Circuit rejected that approach, holding that when the Bankruptcy Code "provides a specified means for a debtor to obtain a specific form

of equitable relief," the "specific requirements" that it sets out cannot be evaded by §105(a). *Id.* at 236-37. Again, that holding has no bearing on this case: Nothing in the bankruptcy court's order here stands "in contravention of the plain language" of any other Code provision, or evades any "specific requirements" in the Code that would otherwise be applicable to the relief that the bankruptcy court ordered. *Id.* at 237. The order merely provides additional relief that is fully consistent with the applicable provisions of the Bankruptcy Code, which is precisely what §105(a) exists to authorize.

### B.   Precedent and Legislative History Confirm that §362(c) Does Not Limit the Bankruptcy Court's Authority Under §105(a).

Searching for an express prohibition in the Code that could limit the bankruptcy court's power under §105(a), the Insurers assert that courts "routinely hold" that §362(c) "mandate[s] termination of the automatic stay upon confirmation." Br.14. But none of the cases that the Insurers cite holds that a bankruptcy court *cannot* extend the automatic stay past confirmation; instead, those cases stand only for the modest (and undisputed) proposition that the automatic stay terminates upon confirmation *when the bankruptcy court has not ordered otherwise*. In fact, several of the cases that the Insurers cite make clear that bankruptcy courts *do* have continuing authority under §105(a) to enjoin outside litigation even after confirmation. *See, e.g.*, *U.S. Dep't of Air Force v. Carolina Parachute Corp.*, 907 F.2d 1469, 1475 (4th Cir. 1990) ("The bankruptcy court may have intended to use

26

its injunctive power under section 105 to issue an injunction independent of the automatic stay."); *In re Fairchild Corp.*, 2014 WL 7215211, at *3 (D. Del. Dec. 17, 2014) (applying plan language extending the automatic stay past confirmation to the effective date); *In re IT Grp., Inc.*, 339 B.R. 338, 342 (D. Del. 2006) (same); *see also Biltmore Invs., Ltd. v. TD Bank, N.A.*, 626 F. App'x 390, 392-93 (4th Cir. 2015) (recognizing that confirmation terminated the automatic stay but remanding for bankruptcy court to consider entering injunction under §105(a)).

Other courts agree that the Bankruptcy Code's automatic stay provisions in §362 do not limit the bankruptcy court's authority to stay litigation in appropriate circumstances under §105(a).  On the contrary, "[c]ourts consistently have found that section 105 may be used to stay actions against non-debtors even where section 362 otherwise would not provide such relief, recognizing that section 105 grants broader authority than section 362."  *Picard v. Fairfield Greenwich Ltd.*, 762 F.3d 199, 211 (2d Cir. 2014) (quoting *In re Calpine Corp.*, 365 B.R. 401, 409 n.20 (S.D.N.Y. 2007)).  The Third Circuit has agreed, explaining that a bankruptcy court "may issue an appropriate injunction" under §105(a) "even if the automatic stay is not operative."  *Penn Terra Ltd. v. Dep't of Envtl. Res.*, 733 F.2d 267, 273 (3d Cir. 1984); *see also, e.g.*, *Queenie, Ltd. v. Nygard Int'l*, 321 F.3d 282, 288 (2d Cir. 2003); *In re Baldwin-United Corp. Litig.*, 765 F.2d 343, 348 (2d Cir. 1985); *New Jersey v. W.R. Grace & Co.* (*In re W.R. Grace & Co.*), 412 B.R. 657, 665 (D. Del. 2009);

Douglas G. Baird, *Elements of Bankruptcy* 12 (6th ed. 2014) (bankruptcy courts have "the power under §105 to stay actions that do not come within the scope of §362"). Those cases cannot be reconciled with the Insurers' argument by negative implication here. The default limitations that the Code places on the scope of the automatic stay under §362 are not implicit limitations on the bankruptcy court's power to extend that stay further under §105.

The legislative history of §105 confirms the point. In discussing the statutory limitations on the automatic stay—in particular, the list of exceptions to the automatic stay in §362(b)—both the House and Senate Reports explained that "[t]he effect of an exception" to the automatic stay "is not to make the action immune from injunction." H.R. Rep. No. 95-595, at 342 (1977); S. Rep. No. 95-989, at 51 (1978). Instead, those reports recognized, the bankruptcy court "has ample other powers" under §105(a) "to stay actions not covered by the automatic stay." H.R. Rep. No. 95-595 at 342; S. Rep. No. 95-989 at 51. "By excepting an act or action from the automatic stay, the bill simply requires that the [debtor] move the court into action, rather than requiring the stayed party to request relief from the stay." H.R. Rep. No. 95-595 at 342; S. Rep. No. 95-989 at 51. So too for §362(c): By continuing the automatic stay until the earliest of closing, dismissal, or confirmation, that provision "simply requires that the [debtor] move the court into action" in order to obtain a stay of outside litigation by particular parties after that point. H.R. Rep. No. 95-595

at 342; S. Rep. No. 95-989 at 51.  It does not prohibit the bankruptcy court from ever

entering such an injunction.

### C.   Routine Bankruptcy Practice Confirms that Bankruptcy Courts Have Authority To Extend the Automatic Stay After Confirmation.

The Insurers' assertion that §362(c) prohibits bankruptcy courts from

extending the automatic stay as to particular parties after confirmation conflicts not

only with statutory text, established precedent, and legislative history, but also with

routine bankruptcy practice.  The Insurers' repeated claim that the order here was

"neither customary nor lawful," Br.11, 23, is demonstrably incorrect; in fact, similar

orders have been entered in numerous bankruptcy cases in the past, in this District

and others.  *See In re NexPak Corp.*, 2010 WL 5053973, at *10 (Bankr. D. Del. May

18, 2010) ("[A]ll injunctions or stays provided for in these Chapter 11 Cases

pursuant to [§362] … shall remain in full force and effect until the … closing of the

Chapter 11 Cases[.]"); *In re PCAA Parent, LLC*, 2010 WL 2745980, at *22 (Bankr.

D. Del. May 17, 2010) ("[A]ll injunctions or stays in effect in the Chapter 11 Cases

pursuant to [§362] … shall remain in full force and effect until the closing of the

Chapter 11 Cases[.]"); *see also, e.g.*, *In re Nat'l Century Fin. Enters., Inc.*, 2006 WL

620643, at *3 (B.A.P. 6th Cir. Mar. 14, 2006) ("[A]ll injunctions or stays provided

for in the Bankruptcy Cases pursuant to [§362] … shall remain in full force and

effect until the closing of the Bankruptcy Cases."); *In re Hardeman Cty. Hosp. Dist.*,

540 B.R. 229, 245 (Bankr. N.D. Tex. 2015) ("[T]he automatic stay of [§362] shall

29

remain in full force and effect until … the date of the closing of the Case[.]"); *In re Motors Liquidation Co.*, 549 B.R. 607, 613 (Bankr. S.D.N.Y. 2016); *In re Woodcrest Club, Inc.*, 2010 WL 5053972, at \*4 (Bankr. E.D.N.Y. Aug. 9, 2010); *In re Enron Corp.*, 2006 WL 3140640, at \*4 (Bankr. S.D.N.Y. Oct. 30, 2006).  By contrast, the Insurers cannot cite a *single case* holding that a bankruptcy court has no authority to extend the automatic stay past the confirmation date.

The Insurers' view also conflicts with the even more routine bankruptcy practice of extending the automatic stay past confirmation to the effective date of the plan.  According to the Insurers, §362(c) mandates that the automatic stay *cannot* be extended past the point at which "a discharge is granted or denied," §362(c)(2)(C), which occurs at confirmation, §1141(d); *see White*, 466 F.3d at 1244.  But bankruptcy courts routinely extend the automatic stay past confirmation until the "effective date" of the plan—the date on which its provisions take effect—which can occur well after the discharge is granted or denied at confirmation.  Indeed, in *both* of the two cases from this Court that the Insurers cite to claim that §362 "mandate[s] termination of the automatic stay upon confirmation," Br.14, the bankruptcy court actually contravened the Insurers' view and extended the automatic stay past confirmation to the effective date.  *See Fairchild Corp.*, 2014 WL 7215211, at \*3; ("[A]ll injunctions or stays provided for in these Chapter 11 Cases pursuant to [§362] … shall remain in full force and effect until the Effective Date."); *IT Grp.*, 339 B.R.

30

at 342 ("[A]ll injunctions or stays arising under or entered during the Chapter 11 cases under [§362] … shall remain in full force and effect until … the Effective Date[.]" (emphasis removed)).

Countless other bankruptcy cases in this District reflect the same routine practice. *See, e.g.*, *In re TK Holdings Inc.*, 2018 WL 1306271, at *36 (Bankr. D. Del. Mar. 13, 2018) ("[A]ll injunctions and stays arising under [§362] … shall remain in full force and effect until … the Effective Date[.]"); *In re Gen. Wireless Operations Inc.*, 2017 WL 5461361, at *20 (Bankr. D. Del. Oct. 26, 2017); *In re ASHINC Corp.*, 2015 WL 13646295, at *25 (Bankr. D. Del. Dec. 29, 2015); *In re Blitz U.S.A., Inc.*, 2014 WL 2582976, at *27 (Bankr. D. Del. Jan. 30, 2014); *In re FKF Madison Grp. Owner, LLC*, 2012 WL 13033640, at *17 (Bankr. D. Del. Apr. 10, 2012); *In re Dall. Stars, L.P.*, 2011 WL 5829885, at *26 (Bankr. D. Del. Nov. 18, 2011); *see also, e.g.*, Confirmation Order ¶66, Dkt.197, *In re Physiotherapy Holdings, Inc.*, No. 13-12965 (Bankr. D. Del. Dec. 23, 2013); Confirmation Order ¶108, Dkt.275, *In re Caribe Media, Inc.*, No. 11-11387 (Bankr. D. Del. Nov. 3, 2011).

So do countless cases in other jurisdictions across the country. *See, e.g.*, *In re Bayou Shores SNF, LLC*, 828 F.3d 1297, 1303 n.8 (11th Cir. 2016); *In re Fin. Oversight & Mgmt. Bd.*, 366 F. Supp. 3d 256, 279 (D.P.R. 2019); *In re Asbestos Claims Mgmt. Corp.*, 294 B.R. 663, 687 (N.D. Tex. 2003); *In re Tex. Pellets, Inc.*, 2019 WL 4253966, at *17 (Bankr. E.D. Tex. Sept. 6, 2019); *In re Aina Le'a, Inc.*,

2019 WL 2274909, at *17 (Bankr. D. Haw. May 24, 2019); *In re Rue21, Inc.*, 575 B.R. 90, 126 (Bankr. W.D. Pa. Sept. 8, 2017); *In re Sabine Oil & Gas Corp.*, 2016 WL 11565432, at *31 (Bankr. S.D.N.Y. July 27, 2016); *In re Montreal Me. & Atl. Ry. Ltd.*, 2015 WL 7431192, at *23 (Bankr. D. Me. Oct. 9, 2015); *In re Oaks*, 2012 WL 5717940, at *26 (Bankr. N.D. Ill. Nov. 15, 2012); *In re Berks Behavioral Health, LLC*, 2010 WL 4852647, at *9 (Bankr. E.D. Pa. Sept. 30, 2010); *In re N.Y. Chocolate & Confections Co.*, 2010 WL 4739715, at *9 (Bankr. N.D.N.Y. Sept. 10, 2010).  The Insurers' assertion that §362(c)(2) flatly prohibits extending the automatic stay past confirmation cannot be squared with any of those cases, or with countless others reflecting the same routine bankruptcy practice.[4]

If all that were not enough, the Insurers' position arguably also conflicts with the even more routine bankruptcy practice of enjoining creditors from suing on discharged claims after the plan is confirmed—a practice that the Insurers themselves concede is "typical," "customary," and "common."  Br.11, 22-24.  Any such injunction could easily be described as an "extension of the automatic stay

---

[4]   The Insurers cannot avoid that conflict by arguing that discharge is not actually "granted or denied" until the effective date.  11 U.S.C. §362(c)(2)(C).  Indeed, they repeatedly concede that the discharge is "granted or denied" at confirmation, not on the effective date of the plan.  Br.3, 7, 10, 13-14.  As the statutory language makes clear and the Eleventh Circuit has specifically held, absent express language in the plan or confirmation order to the contrary, the discharge is "granted or denied" at confirmation even if the plan does not become effective until a later date.  11 U.S.C. §1141(d); *White*, 466 F.3d at 1246-47.

beyond confirmation as to all creditors with respect to any discharged claims"—and so, under the Insurers' logic, implicitly prohibited by §362(c). To the extent the Insurers believe that §362(c) implicitly prohibits the bankruptcy court from enjoining litigation in other courts after confirmation (despite the absence of any statutory language to that effect), it is not at all clear why that limit would not also prohibit a typical plan injunction. And to the extent that the Insurers argue only that §362(c) prohibits the bankruptcy court from describing any post-confirmation injunction as an "extension of the automatic stay"—that is, to the extent they argue the bankruptcy court had the power to enter its injunction here but just used the wrong words to do it—their argument "exalt[s] form over substance." *Schrob v. Catterson*, 948 F.2d 1402, 1407 (3d Cir. 1991).[5]

### D.    The Insurers' Remaining Arguments Are Equally Unpersuasive.

The other arguments that the Insurers raise to support their atextual reading of §362(c) as a limitation on §105(a) are equally unpersuasive. First, the Insurers reach

---

[5]    The Insurers note that a post-confirmation injunction barring creditors from suing on discharged claims is necessary and appropriate to implement the discharge provisions of §524(a) and §1141(d). Br.24. The injunction here was equally necessary and appropriate to implement the bankruptcy court's duties under the Code. *See, e.g.*, 11 U.S.C. §350(a) (estate must be "fully administered" before case can be closed); *id.* §541(a)(1) (estate shall include "all legal or equitable interests of the debtor"); *id.* §1123(b)(6) (plan may include "any other appropriate provision not inconsistent with [the Code]"); *id.* §1142(b) (court may direct "any other act … that is necessary for the consummation of the plan"). In any event, the Insurers have not asserted that §105(a) would not permit this injunction *even absent* §362(c); they argue only that §362(c) implicitly prohibits it. *See* Br.20-22.

for yet another argument by negative implication, asserting that because Congress expressly provided authority for bankruptcy courts to extend the stay in specific cases under §362(c)(3), it must have intended to deny bankruptcy courts the authority to extend the stay in all other cases under §362(c)(2).  Br.16-17.  That misguided argument only underscores the basic error in the Insurers' position.  As already explained (and as the Insurers acknowledge), §362(c)(3) provides that when an individual debtor files a bankruptcy case within a year of the dismissal of the previous case, the stay "*shall terminate*" thirty days after the new case is filed.  11 U.S.C. §362(c)(3)(A) (emphasis added).  That is, the plain text of §362(c)(3) *does* limit the bankruptcy court's ability to extend the automatic stay in cases where an individual's previous bankruptcy case was dismissed less than a year earlier, by *requiring* that the stay "shall terminate" at a certain point in those cases.  *Id.* Congress then created an exception to that strict requirement, providing that the bankruptcy court "may extend the stay" in particular repeat-filer cases if certain conditions are met.  *Id.* §362(c)(3)(B).

Those provisions underscore that Congress took the opposite approach in §362(c)(1) and (c)(2).  In §362(c)(1) and (c)(2)—unlike §362(c)(3)—Congress did *not* require that the stay "shall terminate" at any particular point; it provided only that by default, the stay "continues" until the earliest of closing, dismissal, or confirmation, without limiting the bankruptcy court's authority to extend it further.

*Compare* §362(c)(1)-(2) (stay "continues"), *with* §362(c)(3) (stay "shall terminate"). And because Congress did not require in §362(c)(1) and (c)(2) that the stay "shall terminate" at any point, it had no need to provide an express exception in those subsections like the one in §362(c)(3) allowing the bankruptcy court to extend the stay further under specified conditions—because under §362(c)(1) and (c)(2), unlike §362(c)(3), extending the stay further under §105(a) would not conflict with any "specific," "explicit," or "express" prohibition in the Bankruptcy Code. *Ross*, 858 F.3d at 784 (quoting *Law*, 571 U.S. at 421-22).

Lacking any textual support, the Insurers turn to policy arguments, asserting that extending the automatic stay beyond confirmation somehow conflicts with the underlying purposes behind that provision.  Br.17-18.  But as the Third Circuit explained just three years ago in *Ross*—which the Insurers ignore—"whether or not the Bankruptcy Court's [injunction] undermines these sections' *purposes* is not the question; all that matters is the 'express' and 'explicit' terms of the Bankruptcy Code."  858 F.3d at 784.

In any event, the Insurers are plainly wrong to suggest that allowing a bankruptcy court to extend the automatic stay past confirmation and enjoin outside litigation that could disrupt and delay the bankruptcy process would somehow conflict with the purposes of §362.  As the Insurers themselves acknowledge, the automatic stay bars litigation in other courts in order to "ensure[] an orderly and

equitable distribution of estate assets to creditors," Br.1, and "'maintain the status quo and prevent dismemberment of the estate' until an orderly and fair division of the estate's value among creditors can be arranged," Br.17 (quoting *Ritzen Grp., Inc. v. Jackson Masonry, LLC*, 140 S. Ct. 582, 589 (2020)); *see also In re Denby-Peterson*, 941 F.3d 115, 121 (3d Cir. 2019) (automatic stay serves to "maintain the status quo" in order to "afford[] the parties and the Bankruptcy Court an opportunity to appropriately resolve competing economic interests in an orderly and effective way" (brackets omitted)), *pet. for cert. filed on other grounds sub nom. Denby-Peterson v. NU2U Auto World*, No. 19-1063 (filed Feb. 24, 2020).

In the usual chapter 11 case, those purposes are indeed adequately served by continuing the stay only until confirmation.  This, however, is not the usual case. Here, the Debtors' right to receive the proceeds of their insurance policies is the single most significant asset in these chapter 11 cases, and the resolution of any dispute over those proceeds is critical to the successful termination of the bankruptcy proceedings.  Allowing the Insurers to disrupt and delay the bankruptcy proceedings with a duplicative declaratory judgment suit in a different court would plainly interfere with an "orderly and equitable distribution of estate assets to creditors." Br.1.  Extending the automatic stay as to the Insurers until closing thus fully conforms with the purposes of §362, and the Code quite sensibly does not limit a bankruptcy court's sound discretion to extend the automatic stay in these

circumstances.  The fact that a stay is not *usually* necessary after confirmation is hardly a reason to deprive the bankruptcy court of power to extend the stay in the cases where it *is* necessary.[6]

Finally, the Insurers assert that even if the bankruptcy court had the power to extend the automatic stay past confirmation, it was "improper" for the bankruptcy court to give the Debtors a "litigation advantage" by enjoining the Insurers from filing a duplicative declaratory judgment suit over their insurance obligations in a different court.  Br.18-19.  Of course, once the Insurers concede that the bankruptcy court had the authority to extend the automatic stay, any challenge to the court's discretionary decision to exercise that authority and enjoin the Insurers from bringing disruptive litigation in another court is reviewed only for abuse of discretion.  *See, e.g.*, *Ross*, 858 F.3d at 783; *Friedman's*, 738 F.3d at 551-52.  The Insurers make no attempt to argue that the bankruptcy court abused its discretion in determining that the unique circumstances here warranted the injunction that it issued, and indeed do not even cite the abuse-of-discretion standard that would apply

---

[6]   The Insurers are likewise wrong to suggest that the challenged injunction here will not "facilitate claims administration."  Br.11, 22-23.  The injunction here ensures a speedy and efficient resolution of the Insurers' challenge to their clear payment obligations under their policies; and the sooner that challenge is resolved, the sooner those payments can in turn be distributed to creditors through the claims administration process.

to such a challenge.  Br.18-19; *see* Br.5 (asserting that the appeal presents "a purely legal issue of statutory interpretation").

Even if they had properly raised the issue, the Insurers cannot plausibly contend that the experienced bankruptcy judge who approved the challenged injunction abused his discretion by doing so.  The court's decision to enjoin the Insurers from filing duplicative litigation in another court was hardly a "transparent attempt" to afford the Debtors a "litigation advantage against the Insurers."  Br.3-4. Instead, it was a wholly reasonable and wholly proper effort to resolve these pending bankruptcy cases as efficiently as possible—in particular, by ensuring that any dispute over the Insurers' clear obligations under their policies could be quickly adjudicated by the bankruptcy court and not tangled up indefinitely in duplicative outside litigation.  And it is hard to see what conceivable harm the court's decision does to the Insurers at all; any declaratory judgment claims that they have against the Debtors would clearly be compulsory counterclaims to the lawsuit that is already on file against them, and there would be no basis (other than delay and obstruction) for the Insurers to file such claims in a separate forum in any event.

Contrary to what the Insurers assert, the bankruptcy court's injunction here is plainly a shield, not a sword.  *Contra* Br.18-19.  It does not give the Debtors any greater ability to "pursue their claims against the Insurers" than they would otherwise have had, *contra* Br.19 (emphasis omitted); the Debtors could have filed

their adversary proceeding against the Insurers with or without the challenged injunction, and that proceeding is currently in active litigation with the Insurers' full participation. Nor does the injunction give the Debtors any greater substantive rights than they would have had outside bankruptcy. *Cf.* Br.2. Instead, the injunction simply shields both the Debtors and the bankruptcy process itself from the threat of disruptive simultaneous litigation over the same issues in multiple forums at the same time. Put simply, the bankruptcy court's injunction serves to "promote[] judicial economy and efficiency by minimizing the duplication of litigation in two separate forums," not to give the Debtors some improper advantage. *Conejo Enters.*, 96 F.3d at 353; *see Kurz*, 464 B.R. at 647 (consolidating litigation before the bankruptcy court "avoid[s] piecemeal litigation and … assur[es] the most efficient and economic administration of the debtor's estate").[7]

By contrast, the Insurers give no reasons at all to justify their stubborn insistence on a new declaratory judgment action "in a forum of their choosing." Br.4. They do not even try to explain how that course—filing a duplicative declaratory

---

[7]   The Insurers also suggest that the bankruptcy court erred by extending the automatic stay because the Debtors "are not reorganizing but liquidating." Br.19. That is wrong on the facts and on the law. The Debtors are reorganizing, not liquidating; that is why they filed bankruptcy petitions under chapter 11, not chapter 7. *See* Confirmation Order at 1. In any event, enjoining disruptive and duplicative outside litigation under §105(a) in order to promote the efficient resolution of pending bankruptcy proceedings is equally appropriate regardless of whether the debtor is reorganizing or liquidating.

judgment action in a different forum that is completely unfamiliar with this case—would be either fairer or more efficient than allowing the adversary proceeding that has already been pending for four months and that already presents the exact same issues to be litigated to conclusion.  The Insurers have made no attempt to dismiss that pending adversary proceeding, and indeed have admitted that the proceeding falls within the Bankruptcy Court's jurisdiction under §1334(b).  Answer ¶10, Adv.Proc.Dkt.20.  The Insurers have likewise made no attempt to withdraw the reference—a step they should have taken long ago if they believed the bankruptcy court could not properly adjudicate the proceeding.  And the Insurers have likewise made no attempt to actually file declaratory judgment counterclaims in the pending adversary proceeding, which would give them every opportunity to seek whatever relief they might be hoping to obtain through duplicative simultaneous litigation in a different court.

Those telling omissions only underscore what is really happening here:  It is the Insurers themselves, not the Debtors, who are trying to obtain an improper advantage in this litigation, by threatening simultaneous litigation in a different forum as part of their strenuous efforts to delay final adjudication of their clear payment obligations as long as possible.  The bankruptcy court properly enjoined the Insurers from seeking that improper advantage and wasting both the parties'

resources and judicial resources with duplicative litigation over the same issues in a different court.

If the Insurers believe that the particular declaratory judgment suit they wish to bring will not actually disrupt or delay the ongoing bankruptcy proceedings, their proper course is to move the bankruptcy court to lift the stay, *see* §362(d)—an option that Judge Gross expressly noted, *see* Confirmation Tr.99-100—or to simply file declaratory judgment counterclaims in the adversary proceeding that they are currently defending.  Of course, the Insurers have never moved to lift the stay, presumably because they know (and intend) that the duplicative litigation they seek to file will indeed obstruct the orderly termination of these chapter 11 cases.  The bankruptcy court was well within both its statutory authority and its discretion to enjoin that attempt to interfere with the efficient resolution of these pending cases. Its injunction order should be affirmed.

## CONCLUSION

For the foregoing reasons, this court should affirm the bankruptcy court's order.

Respectfully submitted,

s/Laura Davis Jones

MICHAEL B. SLADE                          LAURA DAVIS JONES (DE BAR NO. 2436)
KIRKLAND & ELLIS LLP                      PACHULSKI, STANG, ZIEHL
300 North La Salle                         & JONES LLP
Chicago, IL 60654                         919 North Market Street, Suite 1700
(312) 862-2000                            P.O. Box 8705
michael.slade@kirkland.com                Wilmington, DE 19899-8705
                                          (302) 652-4100
GEORGE W. HICKS, JR.                      ljones@pszjlaw.com
C. HARKER RHODES IV
MARIEL A. BROOKINS
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, NW
Washington, DC 20004
(202) 389-5000
george.hicks@kirkland.com
harker.rhodes@kirkland.com
mariel.brookins@kirkland.com

*Counsel for Debtors-Appellees*

June 15, 2020

42

**CERTIFICATE PURSUANT TO FEDERAL RULE OF
BANKRUPTCY PROCEDURE 8015(H)**

The undersigned certifies that the foregoing brief contains 10,062 words, and

accordingly complies with the type-volume limitation set forth in Federal Rule of

Bankruptcy Procedure 8015(a)(7)(B).

Dated: June 15, 2020

s/Laura Davis Jones
Laura Davis Jones

## CERTIFICATE OF SERVICE

I hereby certify that on June 15, 2020, I electronically filed the foregoing with the Clerk of the Court for the United States District Court for the District of Delaware by using the CM/ECF system.  I certify that all participants in this case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

s/Laura Davis Jones
Laura Davis Jones
