## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>PES Holdings, LLC, *et al.*,<br><br>　　　　　　　　Debtors. | Case No. 1:20-cv-00441 |
| Multiple Insurers,<br><br>　　　　Appellants,<br>　　v.<br><br>PES Holdings, LLC, et al.,<br><br>　　　　Appellees. | On Appeal from the U.S. Bankruptcy Court for the District of Delaware (No. 19-11626 (KG)) |

---

### REPLY BRIEF FOR APPELLANTS

---

**WILMER CUTLER PICKERING HALE AND DORR LLP**
Benjamin W. Loveland
60 State Street
Boston, MA 02109
Telephone: 617-526-6000
Benjamin.Loveland@wilmerhale.com

Allyson Pierce
250 Greenwich Street
New York, NY 10007
Telephone:  212-230-8800
Allyson.Pierce@wilmerhale.com

**WILMER CUTLER PICKERING HALE AND DORR LLP**
Craig Goldblatt [Del. Bar. No. 6665]
Danielle Spinelli
Joel Millar
1875 Pennsylvania Avenue, NW
Washington, DC 20006
Telephone: 202-663-6000
craig.goldblatt@wilmerhale.com

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT .............................................................................1

ARGUMENT ......................................................................................................4

    I.    The Plan Provision Extending The Automatic Stay Beyond Plan Confirmation And Discharge Until Case Closing Contravenes The Express Terms of §362 Of The Bankruptcy Code ......................................................................................4

    II.    The Bankruptcy Court's Authority Under §105 Of The Bankruptcy Code Cannot Be Used To Override The Express Terms Of §362 ...............................................................10

    III.    Whatever Authority §105 May Provide To Issue A Traditional Injunction Protecting The Estate And The Process To Confirm A Plan, The Order Extending §362's Automatic Stay Was Not Such An Injunction And Would Not Have Been Authorized Under The Post-Confirmation Circumstances Here ...........................16

CONCLUSION ..................................................................................................28

# TABLE OF AUTHORITIES

Page(s)

## CASES

*Biltmore Investments Ltd. v. TD Bank, N.A.*,
626 F. App'x 390 (4th Cir. 2015) ................................................................. 14

*Capital One Auto Fin. v. Cowley*,
374 B.R. 601 (W.D. Tex. 2006) .................................................................. 23

*Czyzewski v. Jevic Holding Corp.*,
137 S. Ct. 973 (2017) ............................................................................. 6, 7

*Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*,
530 U.S. 1 (2000) .................................................................................. 7, 8

*In re A.H. Robins Co.*,
972 F.2d 77 (4th Cir. 1992) ...................................................................... 20

*In re Baldwin-United Corp. Litig.*,
765 F.2d 343 (2d Cir. 1985) ...................................................................... 17

*In re Caesars Entm't Operating Co.*,
808 F.3d 1186 (7th Cir. 2015) ................................................................... 16

*In re Combustion Engineering, Inc.*,
391 F.3d 190 (3d Cir. 2005) ....................................................... 2, 11, 12, 22

*In re Conejo Enterprises Inc.*,
96 F.3d 346 (9th Cir. 1996) ...................................................................... 20

*In re Enron Corp.*,
2006 WL 3140640 (Bankr. S.D.N.Y. 2006) .......................................... 15, 26

*In re Flynn*,
582 B.R. 25 (B.A.P. 1st Cir. 2018) (per curiam) ......................................... 22

*In re Garrett*,
357 B.R. 128 (Bankr. C.D. Ill. 2006) .......................................................... 13

*In re Hardeman County Hosp. Dist.*,
540 B.R. 229 (Bankr. N.D. Tex. 2015) ....................................................... 15

*In re Kaplan*,
    104 F.3d 589 (3d Cir. 1997)..........................................................................18

*In re Martinez*,
    515 B.R. 383 (Bankr. S.D. Fla. 2014)............................................................13

*In re Motors Liquidation Co.*,
    549 B.R. 607 (Bankr. S.D.N.Y. 2016)............................................................15

*In re Nat'l Century Fin. Enterprises, Inc.*,
    2006 WL 620643 (B.A.P. 6th Cir. 2006).......................................................15

*In re NexPak Corp.*,
    2010 WL 5053973 (Bankr. D. Del. May 18, 2010) .......................................15

*In re PCAA Parent, LLC*,
    2010 WL 2745980 (Bankr. D. Del. May 17, 2010) .......................................15

*In re Resorts Int'l, Inc.*,
    372 F.3d 154 (3d Cir. 2004)...................................................................24, 25

*In re Rodriguez*,
    2011 WL 503513 (Bankr. D.P.R. Feb. 14, 2011) .........................................13

*In re Ross*,
    858 F.3d 779 (3d Cir. 2017)...................................................................13, 14

*In re Tribune Co. Fraudulent Conveyance Litig.*,
    2019 WL 1771786 (S.D.N.Y. Apr. 23, 2019)..................................................9

*In re Tribune Co. Fraudulent Conveyance Litig.*,
    946 F.3d 66 (2d Cir. 2019)..............................................................................9

*In re VistaCare Grp., LLC*,
    678 F.3d 218 (3d Cir. 2012)..........................................................................18

*In re W.R. Grace & Co.*,
    412 B.R. 657 (D. Del. 2009) ...................................................................18, 20

*In re Wedgewood Realty Group, Ltd.*,
    878 F.2d 693 (3d Cir. 1989).............................................................19, 20, 22

*In re Woodcrest Club, Inc.*,
    2010 WL 5053972 (Bankr. E.D.N.Y. Aug. 9, 2010) ...................................15

*Kurz v. EMAK Worldwide Inc.*,
    464 B.R. 635 (D. Del. 2011) ........................................................................20

*Law v. Siegel*,
    571 U.S. 415 (2014)...........................................................2, 11, 12, 13, 22

*MacArthur Co. v. Johns-Manville Corp.*,
    837 F.2d 89 (2d Cir. 1988)............................................................................16

*Monarch Life Ins. Co. v. Ropes & Gray*,
    65 F.3d 973 (1st Cir. 1995) ..........................................................................18

*Penn Terra Ltd. v. Dep't Envtl. Resources*,
    733 F.2d 267 (3d Cir. 1984)...........................................................17, 18, 20

*Pettibone Corp. v. Easley*,
    935 F.2d 120 (7th Cir. 1991)........................................................................24

*Picard v. Fairfield Greenwich Ltd.*,
    762 F.3d 199 (2d Cir. 2014)...............................................................17, 20

*Queenie, Ltd. v. Nygard Int'l*,
    321 F.3d 282 (2d Cir. 2003).........................................................................18

*Russello v. United States*,
    464 U.S. 16 (1983) .........................................................................................5

*United States Dep't of Air Force v. Carolina Parachute Corp.*,
    907 F.2d 1469 (4th Cir. 1990)......................................................................14

*United States v. Inslaw, Inc.*,
    932 F.2d 1467 (D.C. Cir. 1991) ...................................................................26

## STATUTES

11 U.S.C. § 105 ...............................................................................*passim*

11 U.S.C. § 362 ...............................................................................*passim*

11 U.S.C. § 524 ...............................................................................11, 12, 15

11 U.S.C. § 1123 ................................................................................................9, 10

11 U.S.C. § 1141 ............................................................................................1, 4, 15

11 U.S.C. § 1307 ....................................................................................................14

28 U.S.C. § 157 ......................................................................................................26

28 U.S.C. § 1334 ....................................................................................................25

## RULES

Fed. R. Bankr. P. 7065 ....................................................................19, 20, 21, 22

Fed. R. Civ. P. 65 ............................................................................................14, 19

## OTHER AUTHORITIES

S. Rep. No. 95-989 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787 ..................17, 20

## PRELIMINARY STATEMENT

The question in this appeal is when the Bankruptcy Code's "automatic stay" ends. The Code gives a clear answer: it "continues until the *earliest* of (A) the time the case is closed; … or (C) … the time a discharge is granted or denied" upon confirmation of a Chapter 11 plan of reorganization. 11 U.S.C. §§362(c)(1)-(2) (emphasis added), 1141. Because the bankruptcy court's order below contravened the express terms of this provision, providing for the automatic stay to continue *beyond* plan confirmation and discharge until case closing, its order should be reversed.

The Debtors argue that nothing in the Code says, in so many words, that the bankruptcy court cannot extend the automatic stay past plan confirmation. But if Congress had intended to give bankruptcy courts such authority, it would have said so, as it did elsewhere in the automatic-stay provision. *Id.* §362(c)(3)(B) ("the court may extend the stay" if certain conditions met). And none of the Debtors' tortured interpretative arguments can make §362(c) mean the opposite of what it says: that bankruptcy courts may continue the automatic stay until the latest— rather than the "earliest"—of plan confirmation and case closing.

Nor can the Debtors achieve that outcome through Bankruptcy Code §105(a). As an initial matter, that argument was not raised or considered below and is accordingly waived. But it fails on the merits in any event because §105(a)

1

grants authority only to issue orders necessary or appropriate to "carry out" the Bankruptcy Code's provisions.  It is therefore settled law that §105(a) grants no authority to "contravene specific statutory provisions," *Law v. Siegel*, 571 U.S. 415, 421 (2014), or "authorize relief inconsistent with more specific law."  *In re Combustion Engineering, Inc.*, 391 F.3d 190, 236-37 & n.49 (3d Cir. 2005). Section 105(a) did not empower the bankruptcy court to declare that the automatic stay should continue beyond the time Congress specified in §362(c).

The Debtors' remaining arguments confuse the issue.  The Debtors cite an inapposite line of cases recognizing that, while the automatic stay is still in effect, §105(a) may authorize courts to enjoin litigation falling outside the scope of the automatic stay where such litigation nonetheless threatens to harm the bankruptcy estate and interfere with the debtor's efforts to confirm a plan of reorganization. Those cases do not help the Debtors.  To begin with, such authority is limited to issuing a traditional judicial injunction in accordance with the usual procedural and substantive requirements for injunctive relief in civil litigation—requirements the Debtors never attempted to show, and that the bankruptcy court never purported to find, were met here.  But in any event, even if §105(a) may authorize an injunction of actions outside the scope of the automatic stay in certain circumstances where necessary to protect the bankruptcy estate and to reach a confirmed plan, it would provide no authority for injunctive relief here.  The Debtors successfully used the

2

automatic stay's "breathing spell" to reach a confirmed plan of reorganization. Those proceedings have ended, the bankruptcy estate no longer exists, and the Debtors wish to continue the Code's temporary stay past its expiration merely to obtain a tactical advantage in a state-law insurance-coverage dispute that is only tangentially related to the bankruptcy.

The Debtors object that the Insurers have no reason to complain. But if the automatic stay truly does not give the Debtors an advantage over the Insurers in the coverage litigation, the Debtors would simply agree to have it end in accordance with its terms, rather than litigating this appeal to keep the bankruptcy court's unlawful extension of the automatic stay in place.

And while it is true that the Insurers have been proceeding in the adversary proceeding in the bankruptcy court and are not presently seeking to file suit in another forum, the basis for the bankruptcy court's subject-matter jurisdiction over the proceeding—which the Debtors filed immediately before the plan was confirmed and the bankruptcy estate ceased to exist—is not free from doubt. If the bankruptcy court should determine that it lacks jurisdiction, or that it should exercise its discretion under the bankruptcy jurisdictional statute to abstain from hearing the state-law coverage claims, the parties would be off to the usual race to sue in an appropriate forum. But the Insurers would lose that race because they would be stayed from filing suit under the order continuing the automatic stay.

3

Moreover, even if the coverage litigation proceeds in the bankruptcy court, litigating under the constraint of the automatic stay's broad injunction leaves the Insurers exposed to the risk that any given exercise of their non-bankruptcy rights may give rise to arguments, whether meritorious or not, that the Insurers have violated the stay. The Debtors may perceive that to be to their advantage. But it is not one the law allows them. The bankruptcy court's order continuing the automatic stay beyond plan confirmation until case closing contravenes §362(c)(1)-(2) and is unlawful. It should be reversed.

## ARGUMENT

**I.    THE PLAN PROVISION EXTENDING THE AUTOMATIC STAY BEYOND PLAN CONFIRMATION AND DISCHARGE UNTIL CASE CLOSING CONTRAVENES THE EXPRESS TERMS OF §362 OF THE BANKRUPTCY CODE**

The Bankruptcy Code specifies when the automatic stay ends: it "continues until the earliest of (A) the time the case is closed; … or (C) … the time a discharge is granted or denied," which occurs upon confirmation of a Chapter 11 plan of reorganization. 11 U.S.C. §§362(c)(1)-(2), 1141. The Debtors concede that §362(c) thus provided for the automatic stay to terminate upon confirmation of their plan. Debtors' Br., Docket Number 15 ("Opp.") 20. The Debtors' only argument is that bankruptcy courts may extend the automatic stay beyond §362(c)'s limits. They may not.

Nothing in §362's text authorizes bankruptcy courts to continue the automatic stay beyond the term Congress prescribed in §362(c)(1)-(2). As the Debtors acknowledge, that is in marked contrast with the immediately adjacent provision, §362(c)(3), which expressly provides that "the court may extend the stay" beyond the term specified there for repeat-filer bankruptcy cases. 11 U.S.C. §362(c)(3). And the Debtors acknowledge (Opp. 22) that, under settled principles of statutory construction, "[w]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposefully in the disparate inclusion or exclusion." *Russello v. United States*, 464 U.S. 16, 23 (1983).

The Debtors respond that the language authorizing bankruptcy courts to extend the automatic stay in §362(c)(3) was necessary because that provision otherwise provides for the automatic stay to end at a specified point in time. Opp. 34-35. But the same is true of §362(c)(1)-(2); those provisions also provide for the automatic stay to end at a specified point in time. The Debtors note that Congress used slightly different language in the respective provisions—providing that the stay "continues until the earliest" of specified events in §362(c)(1)-(2) and that the stay "shall terminate" upon specified events in §362(c)(3)—but there is no meaningful difference between the two. Both provide for the same substantive result: the automatic stay ends at the specified time. The only difference is that Congress

authorized bankruptcy courts to extend the automatic stay beyond the specified time in §362(c)(3), but it did not in §362(c)(1)-(2).

The Debtors argue that this does not matter because, in their view, all that matters is that §362(c)(1)-(2) do not explicitly say that bankruptcy courts cannot extend the automatic stay. Opp. 14. That argument fails.

When Congress provides for a specific result in a statute, courts are not free to infer that any other, unstated, result—much less the exact opposite result—is also permitted, so long as Congress did not explicitly say that courts may not depart from the rule Congress adopted. Here, Congress specified that the automatic stay "continues until the earliest of" plan confirmation and case closing. 11 U.S.C. §362(c)(2). Under no reasonable reading of the statute can that language be read to authorize bankruptcy courts to provide precisely the opposite result and continue the automatic stay until the latest—rather than the "earliest"—of plan confirmation and case closing.

The Supreme Court has repeatedly rejected the Debtors' notion that bankruptcy courts may depart from the Bankruptcy Code's rules so long as Congress has not explicitly prohibited courts from adopting a different rule.

For example, in *Czyzewski v. Jevic Holding Corp.*, 137 S. Ct. 973 (2017), the Court held that bankruptcy courts may not depart from the priority-in-payment rules for payments to creditors in Chapter 11 plans or Chapter 7 liquidations if the court,

6

instead, dismisses a Chapter 11 case and provides in the dismissal order for payments to creditors. The Code's dismissal provision "d[id] not explicitly state what priority rules—if any—apply to a distribution in these circumstances," and hence the debtors argued, as the Debtors do here, that the bankruptcy court could depart from the priority-in-payment rules for plans and liquidations because nothing explicitly prohibited the court from applying different priorities in a dismissal order. *Id.* at 980. Rejecting that argument, the Court stated that it "expect[ed] more than simple statutory silence if, and when, Congress were to intend a major departure" from the priority rules it expressed in the statute: "we would expect to see some affirmative indication of intent if Congress actually meant to make … dismissals a backdoor means to achieve the exact kind of … priority-violating … distributions that the Code prohibits in Chapter 7 liquidations and Chapter 11 plans." *Id.* at 984. So, too, here, if Congress had truly intended to authorize courts to continue the automatic stay beyond plan confirmation until case closing contrary to section 362(c)'s text, it would have said so.

Similarly, in *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1 (2000), the Court rejected an argument that a Bankruptcy Code provision authorizing "the trustee" to take specified action left bankruptcy courts free to authorize other parties to take that same action. Like the Debtors here, the party advancing that argument in *Hartford* asserted that "all [the statute] actually 'says' is

that the trustee may seek recovery under the section, not that others may not," and "that what matters is that section 506(c) does not say that 'only' a trustee may enforce its provisions." *Id.* at 6-8. But the unanimous Supreme Court dismissed that argument, explaining that "[t]his theory—that the expression of one thing indicates the inclusion of others unless exclusion is made explicit—is contrary to common sense and common usage." *Id.* at 8. Rather, "by far the most natural reading of § 506(c) is that it extends only to the trustee" because Congress had specifically addressed "the question '[w]ho may use the provision?'" and "designate[d] a particular party empowered to [invoke] it." *Id.* at 6-7, 9.

Precisely the same is true here. Congress specifically addressed the question "when does the automatic stay end?" in §362(c) and specified that it continues until the "earliest of" plan confirmation or case closing. Courts must presume that "Congress … means in a statute what it says there" and that the rule it expressed is the rule it intended courts to apply. *Hartford*, 530 U.S. at 6.

The Debtors object that it would make little sense to apply §362(c)'s rule here because their case is purportedly unusual. That is so, the Debtors say, because they did not complete all matters before plan confirmation, but instead planned to prosecute after confirmation a cause of action—the insurance-coverage action— which they hope will provide significant recoveries to creditors under the plan. Opp.

36-37.  Given these "unique circumstances," the Debtors claim, it would make sense to extend the automatic stay past confirmation until case closing.  *Id.*

But there is nothing at all unusual about this case.  It is commonplace for large Chapter 11 cases to result in confirmed plans that establish liquidating trusts to prosecute the estate's causes of action after confirmation, with any proceeds distributed to creditors.[1]  The Bankruptcy Code specifically contemplates that the plan may provide for post-confirmation litigation of the bankruptcy estate's causes of action.  11 U.S.C. §1123(b)(3)(B).

More importantly, regardless what rule the Debtors may think would make good bankruptcy policy, that judgment is not theirs to make.  Congress has spoken on this issue.  It was well aware, as §362(c)'s words make clear, that plan-confirmation and discharge could occur "earlie[r]" than case closing.  *Id.* §362(c)(2).  And it made the judgment that the automatic stay must end when the plan is confirmed, and not continue until the case is closed, even where there may remain unfinished business—such as prosecuting estate causes of action post-confirmation

---

[1]  For example, the Chapter 11 plan for Tribune Company established a litigation trust to pursue estate claims after confirmation, including a fraudulent-transfer suit seeking $8 billion.  Nonetheless, plan confirmation terminated the automatic stay.  *See In re Tribune Co. Fraudulent Conveyance Litig.*, 946 F.3d 66, 72-74, 76-77 (2d Cir. 2019) (noting stay terminated when plan confirmed in 2012); *In re Tribune Co. Fraudulent Conveyance Litig.*, 2019 WL 1771786 (S.D.N.Y. Apr. 23, 2019) (addressing litigation trust's post-confirmation pursuit of estate claims, years after confirmation terminated stay).

pursuant to Bankruptcy Code §1123(b)(3)—before the case may be fully closed.  *Id.*

§362(c)(2).  That congressional judgment must be respected.

## II.   THE BANKRUPTCY COURT'S AUTHORITY UNDER §105 OF THE BANKRUPTCY CODE CANNOT BE USED TO OVERRIDE THE EXPRESS TERMS OF §362

The Debtors' principal argument on appeal is that Bankruptcy Code §105(a)

authorized the bankruptcy court to continue the automatic stay beyond plan

confirmation until case closing.  The Debtors never made this argument below,

failing even to mention §105(a).  *Debtors' Mem. Law* [Bankr. D.I. 950] ¶¶ 175-

177; *Tr.* [Bankr. D.I. 1007] 97-102.  The Bankruptcy Court likewise never cited

§105(a) or any other authority in approving the plan provision extending the

automatic stay until case closing.  *Id.* 137; *Order* [Bankr. D.I. 1097].  Instead, the

Debtors argued below that the provision extending the automatic stay was a

"customary" plan injunction enforcing the Plan's discharge and release of

creditors' claims against the Debtors—an argument they have now abandoned on

appeal.  *See* Br. Appellants, Docket Number 9 ("Insurers' Br."), 22-26.

In any event, §105(a) would not have authorized the order extending the

automatic stay.  Section 105(a) only authorizes orders that are necessary or

appropriate to "carry out" the Bankruptcy Code's provisions, 11 U.S.C. §105(a),

not to circumvent them.  Thus, as the Debtors acknowledge (Opp. 23), it is settled

law that "§ 105(a) does not allow the bankruptcy court to override explicit

mandates of other sections of the Bankruptcy Code." *Law v. Siegel*, 571 U.S. 415, 421 (2014) (internal quotation marks omitted).

The Debtors are thus forced to argue that the bankruptcy court's order supposedly does not conflict with the "'express' terms of §362(c)." Opp. 23.  But the plain language of §362(c) refutes that claim; it expressly provides that the automatic stay "continues until the earliest of" discharge and case closing, not the latest of the two.  11 U.S.C. §362(c)(2).  Section 105(a) provided no authority to extend the automatic stay past § 362(c)'s limits.[2]  Insurers' Br. 20-22.

Indeed, *Combustion Engineering* is particularly instructive.  The Bankruptcy Code provision there authorized injunctions barring suits against third parties alleged to be derivatively liable for asbestos claims against the debtor.  *In re Combustion Engineering, Inc.*, 391 F.3d 190, 234-35 (3d Cir. 2005) (citing 11 U.S.C. §524(g)(4)(A)(ii)).  Although the statute expressly authorized injunctions only in respect of third parties' derivative liability, it did not explicitly prohibit injunctions that protected third parties from their own direct, non-derivative liability arising out of their own conduct.  Under the Debtors' logic here (Opp. 23),

---

[2]     The Debtors contend in a footnote that the court's order was purportedly necessary to implement other Code provisions that create the estate and provide for the case to be closed after the estate is fully administered.  Opp. 33 n.5.  But Congress reached a different judgment, evidently concluding it was not necessary to continue the stay beyond plan-confirmation until case closing to achieve those provisions' aims.

§105(a) would have therefore authorized such an injunction of non-derivative liability.  But the Third Circuit rejected that argument, holding that §105(a) did not authorize an injunction absolving two non-debtors of their own direct asbestos liability.  *Id.* at 236-37.

As the Third Circuit explained, "[w]hen a specific Code section addresses an issue, a court may not employ its equitable powers to achieve a result not contemplated by the Code."  *Id.* at 236 (internal quotation marks omitted). "Because § 524(g) expressly contemplates the inclusion of third parties' liability within the scope of a channeling injunction—and sets out the specific requirements that must be met in order to permit inclusion—the general powers of § 105(a) cannot be used to achieve a result not contemplated by the more specific provisions of § 524(g)."  *Id.* at 237.  Under the "well-settled maxim that specific statutory provisions prevail over more general provisions," "[s]ection 105 does not authorize relief inconsistent with more specific law."  *Id.* at 236-37 & n.49 (internal quotation marks omitted); *accord Law*, 571 U.S. at 421.

The same analysis controls here.  Section 362(c) addresses the specific issue of when the automatic stay ends and the bankruptcy court accordingly could not "rel[y] upon § 105(a) to achieve a result inconsistent with" the "more specific provisions of [§ 362(c)(1)-(2)]."  *Combustion Engineering*, 391 F.3d at 237.

12

In view of this settled law, courts have held in analogous circumstances that §105(a) cannot be used to extend the automatic stay beyond §362(c)'s limits. For example, §362(c)(3) provides for the automatic stay to terminate in repeat-filer cases 30 days after the filing, unless the bankruptcy court timely acts to extend the stay upon finding that certain conditions have been met. 11 U.S.C. §362(c)(3). In cases where those conditions for extending the automatic stay were not met and §362(c)(3) accordingly provided for the automatic stay to terminate, courts have rejected arguments that §105(a) empowers bankruptcy courts to extend the automatic stay. *See, e.g.*, *In re Martinez*, 515 B.R. 383, 386 (Bankr. S.D. Fla. 2014) (denying motion to extend automatic stay, citing *Law v. Siegel*; "[u]sing § 105(a) to extend the clear statutory deadline or to impose a different yet identical stay, would provide relief directly contrary to the clear text of § 362(c)(3)(A) and § 362(c)(3)(B)."); *accord In re Rodriguez*, 2011 WL 503513, at *1 (Bankr. D.P.R. Feb. 14, 2011); *In re Garrett*, 357 B.R. 128, 131 (Bankr. C.D. Ill. 2006).

The Debtors do not cite any case holding that §105(a) authorizes a bankruptcy court to extend the automatic stay beyond plan-confirmation until case closing. The Debtors' lead authority, *In re Ross*, 858 F.3d 779 (3d Cir. 2017), did not concern the automatic stay. Instead, the Third Circuit merely held that when a bankruptcy court dismisses a Chapter 13 bankruptcy case, it may restrict the debtor's ability to file a new case pursuant to §105(a) and its inherent power to

sanction abusive litigation. *Id.* at 783-85. The Third Circuit rejected the debtor's argument that the filing restrictions "conflict[ed] with the express terms of § 1307(b)" because, unlike here, that provision did not address the issue; it simply provided that the court "shall dismiss" the case "[o]n request of the debtor." 858 F.3d at 784-85 (quoting 11 U.S.C. §1307(b)).[3]

Unable to cite any authority supporting the bankruptcy court's extension of the automatic stay, the Debtors merely observe that "similar orders" have been entered in other bankruptcy cases. Opp. 29-30. Whether or not those orders evidence a purported "routine bankruptcy practice" (Opp. 29), the fact that courts have granted similar requests in other cases hardly proves that the bankruptcy court's order here was lawful. Indeed, none of the orders cited by the Debtors

---

[3]   The Debtors are likewise wrong in suggesting (Opp. 26-27) that *United States Dep't of Air Force v. Carolina Parachute Corp.*, 907 F.2d 1469 (4th Cir. 1990), cited by the Insurers (Br. 14), purportedly recognized that §105(a) may be used to extend the automatic stay. To the contrary, the Fourth Circuit held that the automatic stay terminated upon plan confirmation under §362(c)(1)-(2) and "there can be no further application of the automatic stay after confirmation." *Id.* at 1474; *id.* at 1474-75 (§105(a) did not authorize order barring interference with confirmed plan because order did not comply with Rule 65 and appeared to conflict with Code's executory-contract provision). The Debtors' reliance (Opp. 27) on *Biltmore Investments Ltd. v. TD Bank, N.A.*, 626 F. App'x 390 (4th Cir. 2015), is misplaced. *See id.* at 392-93 (holding plan-confirmation terminated stay under §362(c); declining to address argument that §105(a) supported stay).

provides any authority or reasoning to support extending the automatic stay, nor is there any indication that any party objected to such provisions.[4]

Finally, the Debtors note that confirmation orders frequently include injunctions barring creditors from collecting claims discharged or released under the plan. Opp. 32-33. That is true. But as the Insurers explained (Br. 22-26), those orders do not extend the automatic stay beyond §362(c)'s term. Rather, they are properly authorized by §105(a) to "carry out" Bankruptcy Code §§524 and 1141, which provide that a discharge granted upon plan confirmation "operates as an injunction" against creditors' collection of discharged claims and that "the provisions of a confirmed plan bind … creditor[s]," 11 U.S.C. §§105(a), 524(a)(1)-(2), 1141(a)-(d), none of which is applicable here.

---

[4] *See In re NexPak Corp.*, 2010 WL 5053973, at *10 (Bankr. D. Del. May 18, 2010) (confirmation order); *accord In re PCAA Parent, LLC*, 2010 WL 2745980, at *22 (Bankr. D. Del. May 17, 2010); *In re Woodcrest Club, Inc.*, 2010 WL 5053972, at *4 (Bankr. E.D.N.Y. Aug. 9, 2010); *In re Hardeman County Hosp. Dist.*, 540 B.R. 229, 245 (Bankr. N.D. Tex. 2015); *In re Nat'l Century Fin. Enterprises, Inc.*, 2006 WL 620643, at *3-5 (B.A.P. 6th Cir. 2006) (post-confirmation litigation over confirmed plan where provision extending automatic stay was res judicata and not contested); *accord In re Motors Liquidation Co.*, 549 B.R. 607, 611, 613 (Bankr. S.D.N.Y. 2016); *In re Enron Corp.*, 2006 WL 3140640, at *4 (Bankr. S.D.N.Y. 2006).

Likewise, the Debtors' citation (Opp. 30-32) to uncontested orders terminating the automatic stay when a confirmed plan goes effective—which is not at issue here—does not establish that an order extending the automatic stay until case closing is lawful.

### III. WHATEVER AUTHORITY §105 MAY PROVIDE TO ISSUE A TRADITIONAL INJUNCTION PROTECTING THE ESTATE AND THE PROCESS TO CONFIRM A PLAN, THE ORDER EXTENDING §362'S AUTOMATIC STAY WAS NOT SUCH AN INJUNCTION AND WOULD NOT HAVE BEEN AUTHORIZED UNDER THE POST-CONFIRMATION CIRCUMSTANCES HERE

Unable to cite any statutory basis supporting the bankruptcy court's order extending the automatic stay, the Debtors' remaining arguments confuse the issue. The Debtors cite a line of cases recognizing that §105(a) may authorize bankruptcy courts to issue a traditional injunction against litigation or other actions falling outside the scope of the automatic stay where such actions threaten to harm the debtor's estate and its effort to reorganize. Opp. 17-18, 27-28. These cases do not support the order extending the automatic stay here.

*First*, none holds that §105(a) authorizes an extension of the automatic stay beyond plan confirmation until case closing. Rather, they recognize that §105(a) may authorize injunctions in certain circumstances where, unlike here, proceedings to confirm a plan are still pending, the bankruptcy estate still exists, and the automatic stay is still in effect. *See, e.g.*, *In re Caesars Entm't Operating Co.*, 808 F.3d 1186, 1188-1189 (7th Cir. 2015) (holding §105(a) authorized temporary injunction of creditors' suits against non-debtors pending bankruptcy examiner's report that was intended to "help the parties negotiate a reorganization of the bankrupt estate"); *MacArthur Co. v. Johns-Manville Corp.*, 837 F.2d 89, 90-91, 93-94 (2d Cir. 1988) (affirming injunction of "actions against [the debtor's]

16

insurers arising from [the debtor's] policies [that] would adversely affect property of the estate and would interfere with the reorganization" sought in "proposed plan of reorganization").

*Second*, this line of cases recognizes that, while the automatic stay is still in effect, §105(a) may authorize injunctions against litigation falling outside the scope of the automatic stay specified in §362(a), or falling within the exceptions to the automatic stay specified in §362(b), where that litigation nonetheless threatens to harm the bankruptcy estate and the debtor's effort to confirm a plan of reorganization.  This use of §105(a) is specifically contemplated in the automatic stay's legislative history.  *Penn Terra Ltd. v. Dep't Envtl. Resources*, 733 F.2d 267, 273 (3d Cir. 1984) (citing legislative history that §105(a) authorizes injunctions of actions excepted from stay under §362(b) where "a particular action … may be harming the estate" (quoting S. Rep. No. 95-989 at 51)); *Picard v. Fairfield Greenwich Ltd.*, 762 F.3d 199, 211-214 (2d Cir. 2014) (recognizing §105(a) may authorize injunction against suits falling outside §362(a) if "the direct result of [the] suit … will be the removal of assets from the bankruptcy estate"); *In re Baldwin-United Corp. Litig.*, 765 F.2d 343, 348 (2d Cir. 1985) (recognizing

§105(a) may authorize injunction of actions falling outside §362(a) that threaten effort to confirm Chapter 11 plan).[5]

This authority has been exercised, for example, to stay litigation against a debtor's officers and directors (which is not a suit "against the debtor" and hence falls outside §362(a)) while the debtor seeks to reorganize.  *See Monarch Life Ins. Co. v. Ropes & Gray*, 65 F.3d 973, 978-79 (1st Cir. 1995) (§105(a) may authorize "temporary injunction … to protect … debtor's … officers[] whose time and energy should not be diverted to collateral lawsuits and away from the effort to reorganize the debtor"); *accord Queenie, Ltd. v. Nygard Int'l*, 321 F.3d 282, 287-88 (2d Cir. 2003).  It has also been exercised to enjoin regulatory proceedings falling within the automatic stay's exception for governmental proceedings, 11 U.S.C. §362(b)(4), where such proceedings threatened to impede a "timely resolution of the bankruptcy estate" and "prevent[] the debtor from completing its reorganization."  *In re W.R. Grace & Co.*, 412 B.R. 657, 664-66 (D. Del. 2009); *Penn Terra*, 733 F.2d at 273-74 (recognizing such authority).

---

[5]     The other Third Circuit cases the Debtors cite (Opp. 17) made similar statements while addressing other issues.  *See In re VistaCare Grp., LLC*, 678 F.3d 218, 231 n.11 (3d Cir. 2012) (noting §105(a) provides authority to enjoin actions "threaten[ing] the integrity of a bankrupt's estate"; holding parties must obtain court's permission before suing trustee); *In re Kaplan*, 104 F.3d 589, 595 (3d Cir. 1997) (noting §105(a) authorizes enjoining litigation "affect[ing] the bankruptcy estate"; holding §105(a) did not authorize order compelling IRS to reallocate tax payments).

The Third Circuit has also recognized that §105(a) may authorize an injunction staying a foreclosure suit after the automatic stay against the suit terminated pursuant to §362(e), which requires the stay to terminate as to a party who moves for relief from the stay under §362(d) if the court fails to order the stay continued in effect within 30 days after the lift-stay motion is filed.  11 U.S.C. §362(d)-(e); *In re Wedgewood Realty Group, Ltd.*, 878 F.2d 693, 699-702 (3d Cir. 1989).  Citing the legislative history contemplating the use of §105(a) to enjoin actions excepted from the automatic stay, the Third Circuit concluded that "the debtor may apply for an injunction under section 105(a) where the automatic stay has lapsed [under § 362(e)] due to the lack of a timely order continuing such stay" after the filing of a lift-stay motion, at least where the automatic stay is generally still in effect and such relief may be necessary to prevent harmful "actions against the bankrupt estate."  *Id.* at 701-02.

*Third*, this line of cases does not hold that §105(a) authorizes courts to extend §362's *statutory* injunction beyond its limits, but rather authorizes courts to issue traditional *judicial* injunctions under ordinary standards for injunctive relief.

Thus, the Third Circuit has held that "to obtain section 105(a) injunctive relief, the debtor [must proceed] in accordance with Bankruptcy Rule 7065," which incorporates Fed. R. Civ. P. 65 governing the issuance of injunctions in civil litigation.  *Wedgewood*, 878 F.2d at 700-701; Fed. R. Bankr. P. 7065.

19

Furthermore, "the debtor … has the burden of demonstrating to the court the following:  substantial likelihood of success on the merits, irreparable harm to the movant, harm to the movant outweighs harm to the nonmovant, and injunctive relief would not violate public interest." *Wedgewood*, 878 F.2d at 700-701; *Penn Terra*, 733 F.2d at 273-274 ("Stays or injunctions issued under [§105(a)] … will be granted or issued under the usual rules for the issuance of injunctions." (quoting S. Rep. No. 95-989 at 51)); *W.R. Grace*, 412 B.R. at 664-66 (granting §105(a) injunction of action excepted from stay under § 362(b)(4) where debtor showed 4-factor test for injunctive relief was met); *Picard*, 762 F.3d at 212-14 (denying §105(a) injunction against suit falling outside §362(a) where debtor failed to show irreparable injury or immediate harm to bankruptcy estate).[6]

Here, the bankruptcy court did not issue a traditional judicial injunction under §105(a) of the sort contemplated by the foregoing line of cases.  The Debtors never moved below for injunctive relief under Federal Rule of Bankruptcy Procedure 7065 and never offered any evidence or argument to show that the

---

[6]     The other cases Debtors cite (Opp. 17-18) are inapposite.  *See In re A.H. Robins Co.*, 972 F.2d 77, 81-82 (4th Cir. 1992) (enforcement of confirmed plan); *In re Conejo Enterprises Inc.*, 96 F.3d 346, 352-53 (9th Cir. 1996) (denial of lift-stay motion); *Kurz v. EMAK Worldwide Inc.*, 464 B.R. 635, 647 (D. Del. 2011) (denial of remand motion).

requirements for injunctive relief were met (irreparable harm to movant, etc.).[7] The bankruptcy court likewise never mentioned any of those requirements, much less found that any of them were met.[8]

Instead, the bankruptcy court simply entered an order continuing §362's automatic stay until case closing. That is very different from entering a judicial injunction under §105(a). The automatic stay is a statutory injunction created and defined by Congress. It is extremely broad, staying a wide range of actions that could affect the debtor or estate property, without being narrowly tailored to a particular defendant's circumstances as a judicial injunction requires. 11 U.S.C. §362(a); Fed. R. Bankr. P. 7065(d). Violations of the automatic stay are punishable not only through contempt sanctions, but also statutory damages, including attorneys' fees and punitive damages in certain circumstances. *Id.* §362(k). And the stay arises upon the filing of a petition, without any showing that the traditional requirements for injunctive relief are met. *Id.* §362(a). While Congress judged that the automatic stay's extraordinary protections were justified to maintain the status quo and protect the estate from dismemberment while the debtor seeks to confirm a plan, it also judged that the stay must end when a plan is confirmed. *Id.* §362(c)(1)-(2). Section 105(a) grants no authority to extend §362's

---

[7]      *Debtors' Mem. Law* [Bankr. D.I. 950] ¶¶ 175-177; *Tr.* [Bankr. D.I. 1007] 97-102.

[8]      *Id.* 137; *Order* [Bankr. D.I. 1097].

statutory stay beyond the limits Congress set, and nothing in the foregoing line of cases suggests otherwise.  Nor could any contrary reading be maintained consistent with *Law v. Siegel* and *Combustion Engineering*.

Accordingly, the bankruptcy court's order extending the automatic stay cannot be affirmed as a purported exercise of authority under §105(a) to issue an injunction.  In *Wedgewood*, the Third Circuit reversed and vacated an order purporting to continue the automatic stay under similar circumstances.  After determining that the stay had terminated under §362(e), the Third Circuit rejected the debtor's argument on appeal "that section 105(a) could be an alternative basis for sustaining the bankruptcy court's order continuing the stay."  878 F.2d at 702. It explained that reversal was required because, just as here, the debtor "never applied for such relief in accordance with the … Bankruptcy Rule 7065"; the debtor "failed to … support the issuance of injunctive relief" under traditional equitable standards; and the bankruptcy court failed to "base[] its decision to continue the stay on its equity powers under section 105(a)."  *Id.*

Other decisions are in accord.  *See In re Flynn*, 582 B.R. 25, 31 & n.8 (B.A.P. 1st Cir. 2018) (per curiam) (holding automatic stay terminated under §362(c)(3) and rejecting argument §105(a) authorized stay where "Debtor did not invoke § 105(a)" below and "never addressed, let alone attempted to satisfy, any of

the four factors necessary for injunctive relief"); *Capital One Auto Fin. v. Cowley*, 374 B.R. 601, 605-07 (W.D. Tex. 2006) (same).

Moreover, even if the Debtors had moved for a traditional injunction below, no basis existed to enter one. The Debtors' plan has been confirmed, the bankruptcy estate no longer exists, and the Debtors have restructured their obligations to their creditors under a legally binding plan of reorganization. Insurers' Br. 15-19. Accordingly, even if §105(a) may authorize the issuance of an injunction against actions falling outside the scope of the automatic stay in certain circumstances, where necessary to protect the estate and efforts to confirm a plan, it provided no authority to do so here, where the Debtors simply wish to extend the automatic stay beyond its statutory limits to gain a tactical advantage in litigation only tenuously related to the bankruptcy.

And notwithstanding the Debtors' rhetoric, that is all that is at issue here. The Debtors argue that the Insurers should not "disrupt[] the ongoing bankruptcy process" (Opp. 2), but that process is over. The Debtors have used the automatic stay's "breathing spell" to resolve their financial distress through confirmation of a plan of reorganization. All that remains to be resolved is a state-law dispute over insurance coverage.

"Once the bankruptcy court confirms a plan of reorganization, the debtor may go about its business without further supervision or approval. The firm is also

without the *protection* of the bankruptcy court.  It may not come running to the

bankruptcy judge every time something unpleasant happens." *Pettibone Corp. v.*

*Easley*, 935 F.2d 120, 122 (7th Cir. 1991).  Rather, "[a] firm that has emerged from

bankruptcy is just like any other [litigant]:  it must protect its interests in the way

provided by the applicable non-bankruptcy law[.]" *Id.*  If the Debtors fear the

Insurers might bring "duplicative litigation" (Opp. 4) in another forum, they have

whatever rights non-bankruptcy law provides for addressing concurrent suits in

different courts, just like any other litigant has outside bankruptcy.

But the Debtors are attacking a strawman.  As the Debtors note, the Insurers

are proceeding in the adversary proceeding pending in the bankruptcy court and

are not presently seeking to commence litigation in another forum.  But, while the

Insurers believe that subject-matter jurisdiction exists, the basis for the bankruptcy

court's jurisdiction over the coverage action is a close call.  If the Debtors had filed

the action post-confirmation, there is considerable authority that subject-matter

jurisdiction would not exist.  *See In re Resorts Int'l, Inc.*, 372 F.3d 154, 164-170

(3d Cir. 2004) ("the scope of bankruptcy court jurisdiction diminishes with plan

confirmation"; holding bankruptcy court lacked subject-matter jurisdiction over

litigation trust's post-confirmation lawsuit because resolution of suit turned on

state-law contract claims and would not require court to interpret plan).  Here, the

Debtors filed the adversary proceeding hours after the bankruptcy court ruled from

the bench that it would confirm the Plan and shortly before the confirmation order was entered the next day.  Insurers' Br. 8-9.  Because the bankruptcy estate was technically still in existence at the time the suit was filed (before confirmation terminated the estate), the suit was a matter that "could conceivably have an[] effect on the estate" when it was filed, bringing it within the court's jurisdiction over proceedings "related to" a bankruptcy case.  *Resorts*, 372 F.3d at 164.

But the bankruptcy court has an independent duty to determine its subject-matter jurisdiction.  If the court should conclude it lacks jurisdiction, the court could dismiss the adversary proceeding *sua sponte* at any time.  Or it could decide to abstain from hearing the state-law based coverage action.  28 U.S.C. § 1334(c)(1) (court may "abstain[] from hearing a particular proceeding … related to a case under title 11" "in the interest of comity with State courts or respect for State law"); *id.* § 1334(c)(2) (mandatory abstention for certain state-law claims). Indeed, abstention is not unusual in busy bankruptcy courts like the Delaware bankruptcy court, particularly when an economic downturn increases new bankruptcy filings presenting emergency requests for relief.  If the bankruptcy court were to dismiss or abstain from hearing the adversary proceeding, the parties would then be in the usual race to sue in an appropriate forum.  Except that the Insurers would lose that race because of the automatic stay.  That would serve no purpose but to give the Debtors an improper tactical advantage in non-bankruptcy

litigation long after the reorganization process and the automatic stay's statutory term and purpose have ended.

Moreover, even if the coverage dispute proceeds in the bankruptcy court, litigating under the constraint of the automatic stay's broad injunction is a recipe for mischief.  In other cases, debtors have argued that defendants' efforts to dispute liability are an improper act to "exercise control over property of the estate" in violation of the automatic stay.  11 U.S.C. §362(a)(3); *compare* Opp. 1 (claiming Insurers are improperly seeking to avoid "paying the amounts they indisputably owe").  While those arguments are wrong as a matter of law, *see United States v. Inslaw, Inc.*, 932 F.2d 1467, 1472-74 (D.C. Cir. 1991), some courts have nonetheless accepted such arguments and held defendants in violation of the stay (even where, as here, a plan had been confirmed and the estate had terminated). *See Enron*, 2006 WL 3140640, at *4-5.  If the Insurers seek to withdraw the reference of the adversary proceeding to the bankruptcy court, 28 U.S.C. §157(d), will they face an argument that they have improperly exercised control over the Debtors' cause of action in violation of the automatic stay?  If the Insurers seek to advance additional funds to the Debtors (as they did during the bankruptcy case) under a reservation of rights, will they be told the automatic stay prevents them from later seeking to claim a setoff to recover any amounts that were improperly paid?  11 U.S.C. §362(a)(7).

The Insurers cannot know exactly how the coverage action will unfold or anticipate the potential circumstances that could give rise to arguments—even if they are wrong—about why the automatic stay operates to tie the Insurers' hands. But under the Bankruptcy Code's terms, that is not a concern the Insurers should have to worry about.  The Debtors urge (Opp. 41) that the Insurers can seek relief from the automatic stay.  But if the Debtors were willing to lift the stay, they could simply agree to delete the plan provision extending the automatic stay in the first place.  The fact that they seeking to defend that provision here instead makes clear that the Debtors believe it is to their advantage to wield the automatic stay against the Insurers in the coverage litigation.  That, however, is not an advantage they may lawfully obtain.  The order extending the automatic stay is unlawful.  It should be reversed.

## CONCLUSION

The Stay Order should be reversed.

Date: July 6, 2020                    Respectfully submitted,

                                      **WILMER CUTLER PICKERING
                                       HALE AND DORR LLP**

                                       /s/ Craig Goldblatt
                                      Craig Goldblatt [Del. Bar. No. 6665]
                                      Danielle Spinelli
                                      Joel Millar
                                      1875 Pennsylvania Avenue, NW
                                      Washington, DC 20006
                                      Telephone: 202-663-6000
                                      craig.goldblatt@wilmerhale.com

                                      Benjamin W. Loveland
                                      60 State Street
                                      Boston, MA 02109
                                      Telephone: 617-526-6000
                                      benjamin.loveland@wilmerhale.com

                                      Allyson Pierce250 Greenwich Street
                                      New York, NY 10007
                                      Telephone:  212-230-8800
                                      allyson.pierce@wilmerhale.com

                                      *Counsel for Appellant Insurers*

28

## CERTIFICATION OF COMPLIANCE

Pursuant to Rule 8015 of the Federal Rules of Bankruptcy Procedure, the undersigned hereby certifies that this brief complies with the type-volume limitations of Federal Rule of Bankruptcy Procedure 8015(a)(7)(B)(ii):

1.      Exclusive of exempted portions of the brief, as provided by Federal Rule of Bankruptcy Procedure 8015(a)(7)(B), the brief contains 6,483 words.

2.      The brief has been prepared in proportionally spaced typeface using Microsoft Word 2010 in 14-point Times Roman font.  As permitted by Federal Rule of Bankruptcy Procedure 8015(a)(7)(C), the undersigned has relied upon the word count feature of his word processing system in preparing this certificate.

Dated:  July 6, 2020

/s/ Craig Goldblatt
Craig Goldblatt
Counsel for the Appellants